**FLORIDA BOARD OF BUSINESS REGULATION DEPARTMENT OF BUSINESS REGULATION, DIVISION OF PARI–MUTUEL WAGERING, a state agency, and the State of Florida, Plaintiffs-Appellants,**

v.

**NATIONAL LABOR RELATIONS BOARD, et al., Defendants-Appellees.**

No. 80–5905.

United States Court of Appeals, Eleventh Circuit.

Sept. 27, 1982.

Rehearing and Rehearing En Banc Denied Dec. 2, 1982.

Daniel C. Brown, Deputy Gen. Counsel, Harold F. X. Purnell, Tallahassee, Fla., for plaintiffs-appellants.

W. Reynolds Allen, Mark E. Levitt, Tampa, Fla., for amicus curiae Volusia Jai-Alai, Inc. & Florida Jai-Alai, Inc.

Margery E. Leiber, Deputy Asst. Gen. Counsel, Sp. Litigation, Ruah Donnelly Lahey, N.L.R.B., Washington, D.C., for defendants-appellees.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

In two cases of first impression, the National Labor Relations Board (the Board) ordered a representation election in a unit of employees of a privately owned and operated, and state-regulated, pari-mutuel jai alai [1] business in Florida.[2] In the first case, *Volusia Jai Alai, Inc.*, 221 NLRB 1280 (1975), the unit consisted of professional jai alai players. In the second case, *Florida Jai Alai, Inc.*, Board Case No. 12–RC–5737 (1979), the unit comprised nonplaying pari-mutuel employees such as cashiers, counters, and pari-mutuel clerks.[3] Following the entry of the election order in each case, the State of Florida, acting through the Department of Business Regulation, Division of Pari-Mutuel Wagering (the State), brought suit in the district court seeking a declaration that, *inter alia*, the Board's exercise of jurisdiction in the jai alai industry was prohibited by the National Labor Relations Act, 29 U.S.C. § 151 et seq. (1976) (the Act), and, if not, by the tenth amendment to the Constitution. The district court concluded that the Board acted lawfully in each case and dismissed the State's suits. The State appeals, raising the same issues it presented in the district court. We conclude that the Board acted within its statutory authority with respect to the jai alai players, but not as to the non-playing pari-mutuel employees, and that the tenth amendment poses no bar to the Board's exercise of jurisdiction over the players.

I.

A. *The Jai Alai Players*

On May 5, 1975, the General Sales Drivers and Allied Employees Union, Local No. 198, (the Players Union) filed a representation petition with the Board seeking an election in a unit of jai alai players employed by Volusia Jai Alai, Inc., at its fronton in Daytona Beach, Florida. The matter was referred to a hearing officer. On June 24, 1975, he convened a hearing and received evidence and legal argument from the Players Union and the employer. See 29 U.S.C. § 159(c). He then forwarded the record to the Board for decision.[4]

The Board considered the case one of first impression, since it had never been asked to assert jurisdiction over labor disputes in the jai alai industry. The Board's initial task was to determine whether the

---

1. Jai alai is a game similar to handball or squash. It is played on a court with three solid walls; a fourth wall of wire mesh separates the court from the area where spectators are seated. Players use a basket-like scoop, a cesta, to catch and throw a latex ball covered with goat skin, a pelota. The object of the game is to return the pelota to the front wall in the air; a player scores points when his opponent fails to make a successful return. Jai alai is played by two players (singles) or four players (doubles).

2. Although professional jai alai is also played in Nevada and Connecticut, our sole concern here is the employees of privately operated jai alai frontons in Florida, where the sport is but one branch of a heavily regulated and highly profitable pari-mutuel wagering industry that includes dog and horse racing. *See* Fla.Stat. §§ 550, 551 (1981). The pari-mutuel industry

in Florida is a major source of state revenues. In the 1978–79 fiscal year, for example, Florida collected nearly $17 million from jai alai alone and over $96 million from the pari-mutuel industry as a whole.

3. The Board more precisely defined this group as "all full-time and regular part-time [jai alai] employees ... but *excluding* all jai alai players, judges, ball boys, pelota makers, cesta makers, assistant cesta and pelota makers, concessionaires, subcontractors, office clerical employees, guards and supervisors as defined in the National Labor Relations Act." *Florida Jai Alai, Inc.*, Board Case No. 12–RC–5737 (1979).

4. The Board hearing officer properly made no recommendation to the Board with respect to the representation petition. 29 U.S.C. § 159(c)(1).

labor dispute posed by the representation proceedings affected interstate commerce. 29 U.S.C. § 159(c)(1). If interstate commerce were affected, the Board's next step would be to determine, under section 14(c)(1) of the Act, 29 U.S.C. § 164(c)(1), whether it should decline to assert jurisdiction over the dispute because the effect of the dispute on interstate commerce was not "sufficiently substantial." If the Board concluded that the players' dispute with Volusia Jai Alai affected interstate commerce and that it should not decline to assert jurisdiction, the Board's final step would be to decide whether the Players Union's petition should be granted and an election ordered.

The Board decided the initial question summarily: it held that the players were protected by the Act.[5] The Board next held that it should assert jurisdiction over the Players Union's petition. *Volusia Jai Alai, Inc.*, 221 NLRB 1280 (1975). It found that the employment characteristics of jai alai players were like those of employees in the casino gambling industry, a state-regulated industry over which the Board previously had asserted jurisdiction. *El Dorado, Inc.*, 151 NLRB 579 (1965). Much like casino employees, the jai alai players constituted a stable work-force with sufficient continuity to enable the Board to conduct meaningful elections and to effectuate remedies for violations of the Act. The Board also found that, as with the casino industry, the State's extensive regulation of the jai alai industry would not conflict with the Board's regulation of the employment relationship between the players and their employer. This relationship was subject to few State rules and Florida had "no interest in the negotiations or in the terms of the contracts entered into between the players and management." *Volusia Jai Alai, Inc.*, 221 NLRB at 1281. Finally, the Board found that the Volusia players had a special need for union representation: all player contracts were

printed in English while almost all the players were Spanish speaking natives of Mexico or Spain who understood little or no English.

In deciding to assert jurisdiction over this jai alai labor dispute, the Board rejected the employer's argument that the Board was bound by its precedent in cases involving the dog and horse racing industries in Florida. In those cases the Board declined to entertain union petitions for elections in units of race track employees because the employee units were plagued by rapid turnover and irregular employment, so that effective regulation was not possible. *See Volusia Jai Alai, Inc.*, 221 NLRB at 1281–82, *citing* the Board's "Declaration of Assertion of Jurisdiction" at section 103.3 of its Rules and Regulations. The Board concluded that this was not the situation at Volusia's jai alai fronton, however. It thus considered the dog and horse track cases inapposite and ordered a representation election at the Volusia fronton. *Volusia Jai Alai, Inc.*, 221 NLRB at 1282.

The State of Florida, through its Department of Business Regulation, Division of Pari-Mutuel Wagering, pervasively regulates jai alai and dog and horse racing. *See* Fla.Stat. §§ 550, 551 (1981); Fla.Code of Administrative Rules 7E. The State licenses every jai alai fronton operator and every fronton employee, including the players. The State regulates employee conduct both on and off the job. For example, employees cannot engage in wagering, legal or illegal, at their frontons; they cannot associate with known criminals; and they must submit to searches, without probable cause, of their persons and belongings. In the case of a labor dispute, an employee is required to notify the Division of Pari-Mutuel Wagering if he intends to go out on strike, in which case he must stay on the job for fifteen days to enable the Division to mediate the dispute.[6]

---

**5.** That labor disputes in the jai alai industry affect interstate commerce and therefore fall within the scope of the Act is not disputed in this appeal.

**6.** If employees walked off the job without notice the fronton would not be able to replace

them immediately since the substitutes would have to be licensed, a process that could consume considerable time. Thus, without the fifteen-day waiting period, a sudden strike could shut down a fronton.

■ The State viewed the Board's decision with alarm. The Board had earlier declined involvement in dog and horse racing in order, the State presumed, to avoid inevitable and unnecessary conflict with the State's regulatory machinery. Now the Board was reversing itself and entering the equally state-regulated jai alai industry.[7] The State perceived a real potential for federal-state conflict. The Board has implied authority to protect its jurisdiction over a labor dispute from state interference and may, for example, obtain a federal court injunction to prevent an employer from regulating through state court a labor activity which is within the scope of the Board's jurisdiction. *NLRB v. Nash-Finch Company,* 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971). The State envisioned the possibility of the Board seeking the same remedy against it in the event the State sought to exercise its regulatory authority in a labor dispute context.

In January 1976, Volusia Jai Alai moved the Board to reconsider its decision. The State moved to intervene, and the Board granted its motion. The Board then denied reconsideration on the ground that neither Volusia nor the State had raised an issue not previously considered by the Board. The Board scheduled a representation election by the Volusia jai alai players for May 12, 1976.

■ On April 27, 1976, the State filed suit in the district court to enjoin the election and to obtain a declaratory judgment that the Board lacked authority over labor disputes involving jai alai players.[8] The State advanced several theories in support of its claim for declaratory relief. Two are presented in this appeal: that the Board should have declined jurisdiction under section 14(c)(1) of the Act; alternatively, that the tenth amendment barred Board regulation of labor disputes in this state-regulated jai alai industry.[9]

The district court refused to enjoin the representation election, and the election proceeded as scheduled. The players' vote

---

**7.** Florida had assumed jurisdiction over labor disputes in the jai alai, dog, and horse racing industries consistent with the provisions of § 14(c)(2) of the Act: "Nothing in this [Act] shall be deemed to prevent or bar any agency or the courts of any State ... from assuming and asserting jurisdiction over labor disputes over which the Board declines ... to assert jurisdiction." 29 U.S.C. § 164(c)(2). Once the Board properly asserted its jurisdiction over the jai alai labor dispute in this case, however, the Board's jurisdiction was exclusive with respect to actions arising under §§ 8, 9, and 10 of the Act, 29 U.S.C. §§ 158–160, including all charges of unfair labor practices by employers or labor organizations and all petitions for representation elections, and neither federal courts, except by way of review or on application by the Board, nor state administrative agencies, nor state courts might assume control over them. *Garner v. Teamsters, Chauffeurs and Helpers Local No. 776,* 346 U.S. 485, 491, 74 S.Ct. 161, 166, 98 L.Ed. 228 (1953).

**8.** The court granted Volusia Jai Alai's motion to appear *amicus curiae* because it had an interest in the outcome of the litigation. Volusia was precluded by law from joining the State as a party plaintiff in seeking to enjoin the representation election. An employer, like Volusia, subject to a Board-ordered election cannot seek pre-election federal judicial review of the Board's order absent extraordinary circumstances which Volusia would concede are not present in this case. See note 12, and accompanying text, and note 13, *infra.* A Board decision to order a representation election is a non-final order and the district court must ordinarily dismiss, for want of subject matter jurisdiction, employer or labor organization challenges to such a decision. *See Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Bishop v. NLRB,* 502 F.2d 1024 (5th Cir. 1974); *Groendyke Transport, Inc. v. Davis,* 406 F.2d 1158, 1163–64 (5th Cir.), *cert. denied,* 394 U.S. 1012, 89 S.Ct. 1628, 23 L.Ed.2d 39 (1969); *Boire v. Miami Herald Publishing Co.,* 343 F.2d 17 (5th Cir. 1965). See also Part II, *infra.*

**9.** Other theories advanced by the State in its complaint, none of which is implicated in this appeal, are

(1) that the Act did not apply to the jai alai players because the jai alai industry did not affect interstate commerce,

(2) that the Board's assertion of jurisdiction over the industry was directly opposed to the intent of Congress to make gambling activities a matter of state concern,

(3) that the Board's assertion of jurisdiction was contrary to 8 U.S.C. § 1251(a)(9) as implemented by the U. S. Immigration and Naturalization Service,

(4) that the State and the frontons were joint employers of the players and were thereby exempted from regulation by § 2(2) of the Act.

defeated the Players Union, and the Board certified the result of the election.

On August 19, 1976, the district court directed the parties to brief the question whether the election result mooted the State's suit. On December 30, 1976, the court dismissed the case as moot, rejecting arguments to the contrary by both the Board and the State, and consequently did not address the merits of the State's claim for declaratory relief. The Board acquiesced in this ruling, but the State appealed. *Florida Board of Business Regulation v. NLRB*, 605 F.2d 916 (5th Cir. 1979) (*Jai Alai I*).

In *Jai Alai I*, we considered only whether the Players Union's election loss mooted the State's case. *Jai Alai I*, 605 F.2d at 918. We concluded that the portion of the State's complaint seeking to enjoin the May 12 election no longer presented a live controversy and was therefore moot, but that the State's request for a declaratory judgment regarding the Board's anticipated assertion of jurisdiction over all labor disputes involving jai alai players in Florida remained extant. *Id.* at 918–19. Stating that the remaining portions of Florida's complaint alleged facts that, " 'under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment,' " *id.* at 918–19, *quoting Connell v. Shoemaker*, 555 F.2d 483, 486 (5th Cir. 1977), and *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), we reversed the district court and remanded the case, instructing the court to consider whether it had subject matter jurisdiction over the controversy and, if so, to rule on the merits. *Jai Alai I*, 605 F.2d at 920.

**B.** *The Jai Alai Pari-Mutuel Employees*

On September 24, 1979, approximately one month prior to our decision in *Jai Alai I*, Local 385 of Teamsters, Chauffeurs, Warehousemen & Helpers Union (the Pari-Mutuel Union) filed a representation petition with the Board seeking an election in a unit of all full-time and regular part-time employees of Florida Jai Alai, Inc.,[10] such as cashiers, counters, and pari-mutuel clerks, but excluding players, judges, ball boys, pelota and cesta makers, concessionaries, contractors, clericals, guards, and supervisors.[11] The State moved to intervene, and the Board granted its motion. The case was referred to a hearing officer, who conducted a hearing at which the union, the employer, and the State introduced evidence and submitted their legal arguments. The hearing officer then forwarded the record of the proceedings to the Regional Director for decision. See section 3(b) of the Act, 29 U.S.C. § 153(b).

The employer and the State conceded that Florida Jai Alai's business affected interstate commerce and that labor disputes involving its employees therefore fell within the ambit of the Act. They contended, however, that the tenth amendment barred the Board's exercise of jurisdiction over these labor disputes because jai alai was a state-regulated gambling industry. In the alternative, the employer and the State contended that the Board should decline, under section 14(c)(1) of the Act, to exercise jurisdiction over the pari-mutuel employees at Florida Jai Alai's Orlando-Seminole fronton. They claimed that the employment-related characteristics of these employees were indistinguishable from those of the workers who performed identical functions at dog and horse tracks; that is, employee turnover rate was high, temporary part-time employees made up a high percentage of the labor force, and the work of all the employees was sporadic. The employer and the State argued that Board precedent, and a Board rule that adopted that precedent, recognized that it was virtually impossible for the Board effectively to regulate labor disputes at the dog and horse tracks, *Hialeah Race Course, Inc.*, 125 NLRB 388 (1959); 29 CFR § 103.3, and they urged the

---

**10.** Florida Jai Alai, Inc., operates the Orlando-Seminole Jai Alai Fronton in Seminole County, Florida.

**11.** Approximately 160 employees were included in the bargaining unit described in the Pari-Mutuel Union's petition.

Regional Director to apply this precedent and rule to the pari-mutuel jai alai employees. They suggested that it would be arbitrary and capricious, and therefore an abuse of discretion, for the Board to assert jurisdiction over these jai alai employees while declining to do so over identical employees at dog and horse tracks.

On November 16, 1979, the Regional Director ordered an election, scheduling it for December 8, 1979. *Florida Jai Alai, Inc.*, Board Case No. 12–RC–5737 (1979). He held that the Board should exercise its jurisdiction over this labor dispute, citing the Board's decision in *Volusia Jai Alai, Inc.*, as controlling precedent. He failed to explain, however, why *Volusia Jai Alai, Inc.*, controlled his decision even though the employment characteristics of players in *Volusia Jai Alai* and the pari-mutuel employees in the case before him were materially different. He also failed to explain why the Board's rules applicable to dog and horse tracks did not govern this case. Both Florida Jai Alai and the State petitioned the Board to reconsider the Regional Director's decision, 29 U.S.C. § 153(b), but the Board denied their petition.

On December 3, 1979, the State filed suit in the district court to enjoin the December 8 election and to obtain the same declaratory relief it sought in *Jai Alai I*. The court refused to enjoin the election but did order the Board to impound the ballots and to refrain from certifying the election results or from otherwise conducting the representation proceeding until further order of the court.

### C. Consolidation and Proceedings in the District Court

On December 10, 1979, following our remand of *Jai Alai I*, the court consolidated the State's two cases for all further proceedings. On January 25, 1980, the employers, Volusia and Florida Jai Alai, moved the court to appear as *amici curiae*. On February 27, 1980, the court granted their motion.

Both parties, the State and the Board, then moved for summary judgment, presenting the following issues:

(1) whether the district court had subject matter jurisdiction to consider the State's claim that the Board's representation election order was invalid;

(2) whether the Board abused the discretion accorded by section 14(c)(1) of the Act by refusing to decline to assert jurisdiction over players and pari-mutuel workers in the jai alai industry in the face of its policy not to exercise jurisdiction over pari-mutuel employees in the dog and horse racing industries;

(3) whether application of the Act to the pari-mutuel jai alai industry in Florida was barred by the tenth amendment.

The district court carefully considered these issues in a memorandum opinion issued on September 30, 1980. *Florida Board of Business Regulation v. NLRB*, 497 F.Supp. 599 (M.D.Fla.1980). The court concluded that it had subject matter jurisdiction, that the Board had not abused its section 14(c)(1) discretion by asserting jurisdiction over the jai alai players and the pari-mutuel employees, and that the tenth amendment did not bar application of the Act to labor disputes in the jai alai industry.

In this appeal, the Board questions the district court's subject matter jurisdiction; the State asks us to reverse the district court on the section 14(c)(1) and tenth amendment issues. We will consider seriatim the three issues decided by the district court.

### II.

The Board, citing *Boire v. Greyhound Corp.*, 376 U.S. 473, 479, 84 S.Ct. 894, 898, 11 L.Ed.2d 849 (1964) and *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), contends that the district court has subject matter jurisdiction to enjoin the execution of a representation election order only in certain "extraordinary circumstances," [12] and that such circumstances are not

---

12. Three "extraordinary circumstances" requiring pre-election judicial review of a Board representation order have been recognized by the courts. *Bishop v. NLRB*, 502 F.2d 1024, 1027 (5th Cir. 1974). The first is when a case

presents a "public question[ ] particularly high on the scale of our national interest because of [its] international complexion." *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547

present in either of these jai alai cases. We are convinced that the rule of *Boire v. Greyhound Corp.* and *Leedom v. Kyne* is inapposite and that the district court had subject matter jurisdiction under 28 U.S.C. § 1331 (1978 Supp.) to entertain the State's suits against the Board. It is true that in each case the State asked the district court to enjoin the Board-ordered representation election. As to that prayer for relief the Board's position is correct, for the extraordinary circumstances rule of *Greyhound* and *Leedom* was clearly applicable. But the State's complaint asked for more than an injunction against a Board election order; it sought a declaration that the Board lacked statutory and constitutional authority to regulate labor disputes in the jai alai industry as a whole. As to this prayer for relief, the extraordinary circumstances rule had no application.

The extraordinary circumstances rule was fashioned to deal with time consuming pre-election challenges to Board orders which unduly delayed the choice of employee representations. When Congress passed the Act in 1935, it was particularly concerned that Board-ordered representation elections be held posthaste.

> When an employee organization has built up its membership to a point where it is entitled to be recognized as the representative of the employees for collective bargaining, and the employer refuses to accord such recognition, the union, unless an election can promptly be held to determine the choice of representation, runs

the risk of impairment of strength by attrition and delay while the case is dragging on through the courts.

*Boire v. Greyhound Corp.*, 376 U.S. at 478, 84 S.Ct. at 897, *quoting* H.R.Rep.No.972, 74th Cong., 1st Sess. at 5 (1935). Congress therefore provided that employers and labor unions could not seek direct review of Board election orders in the Court of Appeals until the election had been held and the Board had certified the result and entered a bargaining order. *See American Federation of Labor v. NLRB*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940).[13]

Congress did not expressly bar employers and unions from seeking pre-election review in district court, however, and they frequently turned to the district courts for relief. *Leedom v. Kyne* questioned the validity of this tactic, and the Supreme Court held that the district courts had subject matter jurisdiction to entertain these suits and to review the Board's representation orders. 358 U.S. at 188, 79 S.Ct. at 183–84. The Court later qualified this holding in *Boire v. Greyhound Corp.*, 376 U.S. at 478–79, 84 S.Ct. at 897–98, to prevent attempts by an employer or a rival union to use the district court merely as a weapon to delay a Board-ordered election. Only in extraordinary circumstances,[14] the Court concluded, where the need to hear the case immediately is manifest, is the district empowered to enjoin an election and to review an election order. *Id.* at 479–80, 84 S.Ct. at 898.

(1963). The second is when the plaintiff makes a *clear and strong* showing that the Board has violated his constitutional rights. *Squillacote v. Int'l Bhd. of Teamsters, Local 344*, 561 F.2d 31, 38 (7th Cir. 1977); *McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917 (D.C. Cir.1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969); *Greensboro Hosiery Mills, Inc., v. Johnston*, 377 F.2d 28, 32 (4th Cir. 1967). *Cf. Fay v. Douds*, 172 F.2d 720 (2d Cir. 1949) (alleged constitutional violation that is *not transparently frivolous* sufficient to invoke district court's subject matter jurisdiction to review representation order). The third is when the plaintiff asserts that the Board clearly acted "in excess of its delegated powers and contrary to a specific prohibition in the Act." *Leedom v. Kyne*, 358 U.S. at 188, 79 S.Ct. at 184.

**13.** Congress intended that Board representation election orders be reviewed by the Court of Appeals after the election and after the employer refused to bargain with the union. The employer's initial challenge to the Board representation election order would be made before the Board, when the employer responded to the union's unfair labor practice charge. If the Board affirmed its earlier election order and concluded that the employer was guilty of an unfair labor practice, the employer could then seek review of the Board's decision, including its election order, in the Court of Appeals. *See* §§ 9(d) and 10(f) of the Act, 29 U.S.C. §§ 159(d) and 160(f). *See also Boire v. Greyhound Corp.*, 376 U.S. at 477, 84 S.Ct. at 896–97.

**14.** See note 12, *supra*.

Nothing in *Boire v. Greyhound Corp.* suggests that this limitation on the power of the district court to review Board election orders is applicable to a suit that does not seek review of a representation order or a stay of an election or the certification of election results. The State contends, and we agree, that a plaintiff who cannot seek review of the Board's order in the Court of Appeals but who claims that the Board violated his federal rights has the right to repair to the district court under any statute that may grant the district court the power to hear his claim. *See Leedom v. Kyne,* 358 U.S. at 190, 79 S.Ct. at 184.

When the district court handed down the decision now before us, the State's complaint in *Jai Alai I,* the players' case, contained no challenge to the Board's election order; its prayer that the district court enjoin the election at Volusia's Daytona Beach fronton had been mooted by the election results. *Jai Alai I,* 605 F.2d at 918–19. However, the complaint did challenge the Board's authority to assert jurisdiction over labor disputes in the jai alai industry and asked for a declaratory judgment to that effect. In *Jai Alai I,* we found that this claim presented a live controversy not dependent on the election outcome. The State did not seek to prevent what had already been accomplished, the implementation of the Board's *Volusia Jai Alai, Inc.,* order, and thus there was no need to apply the rule of *Greyhound* and *Leedom* to determine whether the Board's election order should be protected from pre-election review. The same was true of the pari-mutuel employees case; the election had already been held when the district court moved to the merits of the State's statutory and constitutional attacks on the Board's exercise of jurisdiction in the jai alai industry.

We conclude, then, that the extraordinary circumstances rule of *Boire v. Greyhound Corp.* did not foreclose the district court's power to decide these cases. We also conclude that the court was authorized to proceed to the merits of the State's case, as it did, under the general jurisdiction statute, 28 U.S.C. § 1331 (1978 Supp.).

Section 1331, as it stood in September 1980, gave the district court original jurisdiction of any civil action arising under the Constitution, laws, or treaties of the United States and brought against the United States or any agency thereof. 28 U.S.C. § 1331(a) (1978 Supp.). The State's complaints alleged that the Board, in refusing to decline to assert jurisdiction over the Florida jai alai industry, abused the discretion given it by section 14(c)(1) of the Act because it directly contravened the firm policy it had established for identical employees in the horse and dog racing branches of Florida's gambling industry. The complaints also alleged that the Board's assertion of jurisdiction over the jai alai players and pari-mutuel employees impermissibly impinged on a State industry in violation of the tenth amendment. These claims obviously "arise under" the Constitution or law of the United States. Neither is frivolous or foreclosed by prior decision. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Bell v. Health-Mor, Inc.,* 549 F.2d 342 (5th Cir. 1977). Subject matter jurisdiction under 28 U.S.C. § 1331 was clearly present.

### III.

The State contends that by deciding to regulate the jai alai industry, the Board abused its discretion under section 14(c)(1) of the Act because it violated its established policy of declining to regulate two identical industries, dog and horse racing. *See* 29 CFR § 103.3. The Board responds alternatively: First, the employment characteristics of jai alai employees and dog and horse track employees are materially dissimilar; therefore, its policy regarding dog and horse track employees does not apply. Second, even if jai alai and race track employees are identically situated, the Board need not treat them similarly, absent prejudice to the State. The parties have addressed this section 14(c)(1) issue as they did in the district court, as if the cases involving the jai alai players and the pari-mutuel employees were identical. The cases are not identical by any means and must be considered separately.

## A. *The Jai Alai Players*

In its opinion in *Volusia Jai Alai, Inc.*, 221 NLRB 1280, the Board found that the employment characteristics of jai alai players differed materially in some respects from those of pari-mutuel employees at race tracks and observed that the employment characteristics that caused it to decline to assert jurisdiction in the race track industry did not pertain to jai alai players. The Board therefore reasoned that it should not be bound by policy it had adopted for the race track industry, and refused to follow that policy, opting instead to exercise jurisdiction over the players. We have indicated the reasons the Board gave for this decision in part IA, *supra*.

The State argues that the Board erred in its assessment of jai alai players' employment characteristics vis-a-vis those of race track employees, but it points to no evidence in support of its argument. The State's claim of factual error is unfounded.

## B. *The Pari-Mutuel Employees*

In contrast to the Board's in-depth findings and analysis in *Volusia Jai Alai, Inc.*, the Regional Director in *Florida Jai Alai, Inc.*, failed to make any findings regarding the employment characteristics of pari-mutuel employees in the jai alai industry and the pari-mutuel employees at the race tracks. The Regional Director simply concluded that it was the Board's policy to regulate *all* jai alai labor disputes, citing the Board's players decision in *Volusia Jai Alai*. He did not explain the significance of *Volusia Jai Alai* to his decision. In the face of the State's overwhelming and undisputed evidence that employment characteristics of pari-mutuel workers in the jai alai, dog racing, and horse racing industries were identical in all relevant respects, we think the Regional Director should have explained why he was singling out the jai alai workers for different treatment. He also should have explained why he considered the *Volusia Jai Alai* players case controlling precedent.

The Board cites nothing in the record that refutes the State's evidence; nor does it explain why pari-mutuel employees in the jai alai business should be treated differently from their counterparts at the dog and horse tracks. Instead, the Board contends that its section 14(c)(1) discretion is so broad that it can arbitrarily treat similar labor disputes dissimilarly unless the affected party shows that it has been substantially prejudiced thereby. According to the Board, a decision to exercise jurisdiction cannot be disturbed unless the complaining party demonstrates that the decision has caused substantial prejudice. *NLRB v. Austin Developmental Center, Inc.*, 606 F.2d 785, 790 (7th Cir. 1979); *NLRB v. Harrah's Club*, 362 F.2d 425, 427 (9th Cir. 1966), *cert. denied*, 386 U.S. 915, 87 S.Ct. 859, 17 L.Ed.2d 788 (1967).

The district court agreed with the Board that a decision to assert jurisdiction cannot be overturned absent a showing of prejudice. The court relied on the reasoning of *NLRB v. Harrah's Club*, 362 F.2d at 427. There, the Ninth Circuit refused to disturb the Board's decision to assert jurisdiction over gambling casino employees even though those employees were identical to race track employees the Board had declined to regulate, because the plaintiff employer had failed to show that it would be prejudiced [15] when compared with the race track employers.

We do not find *Harrah's Club* directly applicable to the issue before us. In that case, it was the employer, not the State, who contested the NLRB's exercise of jurisdiction. Although the *Harrah's Club* court did not explain what showing of prejudice it was looking for, we read it as requiring an employer to show that he will be competitively disadvantaged if his employees are subject to NLRB jurisdiction and his competitor's are not. Obviously, the State is in no position to make any demonstration of competitive injury by the NLRB's decision to take jurisdiction over jai alai em-

---

**15.** The decision in *Harrah's Club* does not say what kind of prejudice must be shown by the employer.

ployees and not race track employees, and we therefore find *Harrah's Club*'s prejudice requirement inapposite to the case before us.[16]

Moreover, we think it enough that the State has shown that the NLRB treated two industries, identical in all comparable respects, differently, and gave no reasons for doing so. The NLRB's actions in this case "fall somewhere on the distant side of arbitrary," *Central Florida Enterprises, Inc., v. FCC*, 598 F.2d 37, 50 (D.C.Cir.1978), and violate the "fundamental principle of reasoned explanation" which serves

> at least three interrelated purposes: enabling the court to give proper review to the administrative determination; helping to keep the administrative agency within proper authority and discretion, as well as helping to avoid and prevent arbitrary, discriminatory, and irrational action by the agency; and informing the aggrieved [party] of the grounds of the administrative action so that he can plan his course of action....

*Matlovich v. Secretary of the Air Force*, 591 F.2d 852, 857 (D.C.Cir.1978); Davis, *Administrative Law* § 14.24 (1980).

This could easily be a different case if the NLRB had given even scant justification for its different treatment of jai alai and race track pari-mutuel employees; the discretion accorded the NLRB to exercise jurisdiction or not is, after all, quite broad. Here, however, where the NLRB in effect asserts a right to act arbitrarily absent some undefined showing of "prejudice," we have no difficulty in finding the Board's exercise of jurisdiction over jai alai pari-mutuel employees to be an abuse of its discretion under section 14(c)(1).

## IV.

Because we have concluded that the Board's assertion of jurisdiction over labor disputes involving jai alai players was authorized by the Act, we must address the State's claim the Board's conduct violated

the tenth amendment. In *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the Supreme Court struck down provisions of the Fair Labor Standards Act (FLSA)[17] which applied to State employees because the provisions impinged on the tenth amendment right of the States to carry out their sovereign functions. Their validity could not be sustained, therefore, by the commerce clause. The FLSA could not be used by Congress, the Court said, to regulate the "States as States." *Id.* at 845, 96 S.Ct. at 2471. Florida contends that its relationship with the privately owned and operated jai alai industry is tantamount to the relationship between a state and its employees, and that *Usery* precludes application of the National Labor Relations Act to labor disputes in the jai alai industry.

The State concedes, as it must, that the case before us is not on all fours with *Usery*. It makes this concession because the Court in *Usery* was careful to state that its holding applied to the regulation of "States as States," as distinguished from the regulation of private business. *Id.* at 845, 96 S.Ct. at 2471. The State urges us to extend *Usery*'s holding to include those situations in which the contested federal measure appears to affect only a business regulated by a State but which, in reality, is so closely tied to the state that the measure interferes with the state's sovereign functions.

■ The district court declined the State's invitation to extend the reasoning of *Usery* to this case, specifically concluding that nothing in *Usery* suggests that under the tenth amendment the State has more than the right to be free from commerce clause regulation. Two Supreme Court cases decided after summary judgment was entered in this case have proved the district court prophetic. These cases make it crystal clear the holding of *Usery* is to be strictly and narrowly construed:

---

**16.** Although the State could conceivably show some hardship (such as administrative inconvenience) due to the NLRB's decision to treat two identical industries differently, we do not view this sort of "prejudice" as important in

deciding whether the NLRB has acted properly in exercising jurisdiction in a given case.

**17.** 29 U.S.C. § 201 *et seq.*

[I]n order to succeed, a claim that congressional commerce power legislation is invalid under the reasoning of *National League of Cities* must satisfy *each* of three requirements. First, there must be a showing that the challenged regulation regulates the "States as States." *Id.,* [426 U.S.] at 854 [96 S.Ct. at 2475]. Second, the federal regulation must address matters that are indisputably "attributes of state sovereignty." *Id.,* at 845 [96 S.Ct. at 2471]. And third, it must be apparent that the States' compliance with the federal law would directly impair their ability "to structure integral operations in areas of traditional functions." *Id.,* at 852 [96 S.Ct. at 2474].

*United Transportation Union v. Long Island Railroad Co.,* —— U.S. ——, ——, 102 S.Ct. 1349, 1353, 71 L.Ed.2d 547 (1982) (footnote omitted), *quoting Hodel v. Virginia Surface Mining & Reclamation Assn.,* 452 U.S. 264, 287–88, 101 S.Ct. 2352, 2366, 69 L.Ed.2d 1 (1981). Moreover, "even if these three requirements are met, the federal statute is not automatically unconstitutional under the tenth amendment. The federal interest may still be so great as to 'justif[y] State submission.'" *Long Island Railroad,* —— U.S. at —— n.9, 102 S.Ct. at 1353 n.9. Finally, in summing up its analysis in *Hodel,* the Supreme Court provided us with a definitive guide for deciding Florida's tenth amendment claim:

> It would therefore be a radical departure from long-established precedent for this Court to hold that the Tenth Amendment prohibits Congress from displacing State police power laws regulating private activity. Nothing in *National League of Cities* compels or even hints at such a departure.

*Hodel,* 452 U.S. at 292, 101 S.Ct. at 2368. The Supreme Court refused to make that radical departure from precedent in *Hodel,* and we must do likewise. The State's tenth amendment claim therefore must be rejected.

### V.

In summary, we hold: the district court had subject matter jurisdiction to decide the issues presented on summary judgment;

the Board acted within its statutory discretion in asserting jurisdiction over labor disputes involving jai alai players, and the tenth amendment did not bar that exercise of jurisdiction; the Board's decision to exercise jurisdiction over labor disputes involving jai alai pari-mutuel employees was arbitrary and capricious and an abuse of discretion and is therefore vacated.

The judgment of the district court is accordingly AFFIRMED in part and VACATED in part.