# United States Court of Appeals
## For the First Circuit

---

No. 00-1417

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
LOCAL 3936, AFL-CIO,

Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY,

Respondent.

---

ON PETITION FOR REVIEW OF A DECISION AND ORDER

OF THE FEDERAL LABOR RELATIONS AUTHORITY

---

Before

Selya, Circuit Judge,
Coffin and Bownes, Senior Circuit Judges.

---

Stuart A. Kirsch, with whom Mark D. Roth, American
Federation of Government Employees, AFL-CIO, was on brief for
petitioner.
Judith A. Hagley, with whom William R. Tobey, and David M.
Smith, Federal Labor Relations Authority, were on brief for
respondent.
Juan A. Lopez-Conway and Garcia & Fernández Law Offices on
brief for the Commonwealth of Puerto Rico, amicus curiae.

February 6, 2001

**BOWNES, Senior Circuit Judge.** Respondent Federal Labor Relations Authority ("the Authority") issued a final decision and order holding that the Puerto Rico Air National Guard ("the Guard") committed unfair labor practices in violation of the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (1994 & Supp. 1998). <u>P.R. Air Nat'l Guard 156th Airlift Wing and Am. Fed'n Gov't Employees, Local 3936</u>, 56 F.L.R.A. 174 (2000). The Authority further held, however, that the National Guard Technicians Act of 1968, 32 U.S.C. § 709 (West Supp. 2000) ("Technicians Act"), precluded it from reviewing the Guard's alleged retaliatory termination of a union member. Petitioner American Federation of Government Employees, Local 3926 ("the Union") challenges the ruling as to the retaliatory termination. We affirm.

## I. Background

The Union is the exclusive representative of certain "dual-status" technicians employed by the Guard. These technicians are federal civilian employees who, as a condition of their employment, must become and remain military members of the state National Guard unit in which they are employed. 32 U.S.C. § 709.

In late November, 1998, the Union planned to conduct an informational picket concerning working conditions at the

-3-

Guard. Upon learning of the Union's intention, the Assistant Adjutant General advised Pedro Romero, the local union president, not to picket on the access road leading to the Guard's main gate. The Assistant Adjutant General also warned that the picketing might be photographed and that the picketers should wear bags or Halloween masks to cover their faces. On December 8, 1998, approximately twenty-five off-duty technicians picketed in an area designated by the Guard.

The following month, the Guard placed the picketing technicians on non-duty status and suspended their security clearances. The Authority's General Counsel initiated an unfair labor practice proceeding against the Guard under section 7116(a)(1) of the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 ("the Labor-Management Act") (1994 & Supp. 1998). The complaint alleged that the Guard interfered with bargaining unit employees' right to picket by ordering the employees not to engage in picketing on the Guard's property, placing them on non-duty status, and suspending their security clearances.

Effective March 9, 1999, the Guard discharged Romero from his military position, then terminated his technician employment because he was no longer a Guard member. In response, the General Counsel amended the complaint to allege

-4-

that the termination was retaliatory and violated the Labor-Management Act.

The Guard moved to dismiss the case, contending that the Authority lacks subject matter jurisdiction. The administrative law judge denied the motion. Because the Guard failed to participate in the pre-hearing discovery required by the Authority's regulations, the General Counsel moved for sanctions. The ALJ granted the motion and prohibited the Guard from introducing evidence, objecting to the General Counsel's evidence, or "raising any particular jurisdictional defense pertaining to a particular remedy." Ultimately, the ALJ held that the Guard had violated the Labor-Management Act as charged by interfering with the technicians' right to picket, and ordered the Guard to rescind the retaliatory personnel actions taken against the technicians, including Romero's termination.

The Guard appealed the ALJ's decision to the Authority, which largely affirmed the ALJ. The Authority determined, however, that the ALJ's sanctions could not legally prevent the Authority from addressing issues regarding its jurisdiction. The Authority further held that it was precluded from reviewing Romero's termination because of section 709(f) of the Technicians Act, which gives the state adjutants general

(including the adjutant general of Puerto Rico) "final review"

of technician terminations.  The Union appeals.[1]

_____

[1]The Guard did not appeal from any aspect of the Authority's decision.  The Commonwealth of Puerto Rico, in an amicus brief, raises two issues in addition to those briefed by the parties: that the Authority has no jurisdiction whatsoever over the Guard; and that the Authority was collaterally estopped by a federal district court decision in a related action, see note 3, infra.  Because these issues were raised for the first time on appeal by an amicus, not by a party, we do not consider them. See United States v. Sturm, Ruger & Co., 84 F.3d 1, 6 (1st Cir. 1996) ("an amicus cannot introduce a new argument into a case"); McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 23 n.9 (1st Cir. 1991) ("To the extent that the amicus raises different grounds in support of reversal," a court should "decline to consider those grounds").

## II. Discussion

Our standard of review of Authority decisions is "narrow." Am. Fed'n of Gov't Employees, Local 2343 v. Fed. Labor Relations Auth., 144 F.3d 85, 88 (D.C. Cir. 1998). The Authority's actions shall be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 7123(c), incorporating 5 U.S.C. § 706(2)(A).

On appeal, the Union first argues that the Authority should not have considered the Technicians Act argument, because the Guard did not raise the issue below and because the ALJ had correctly prohibited the Guard from asserting jurisdictional defenses. The Authority may, however, consider sua sponte whether it has jurisdiction to decide the merits of a dispute. United States Small Bus. Admin. and Wildberger, 51 F.L.R.A. 413, 423 n.9 (1995). We do not think, therefore, that the Authority abused its discretion in considering jurisdictional defenses. Accordingly, we proceed to the merits of the Authority's decision that the Technicians Act precluded it from reviewing Romero's termination. We first consider the frameworks of the two statutes at issue. In 1968, Congress enacted the Technicians Act to "accommodate the civilian interests of [National Guard technicians] without intruding on the Guard's

military and security needs, and to recognize by statute the special employee status that had evolved informally," N.J. Air Nat'l Guard v. Fed. Labor Relations Auth., 677 F.2d 276, 279 (3d Cir. 1982).  The Act sets forth several conditions of employment concerning the discipline and discharge of Guard technicians that remain within the final discretion of the adjutants general of the state National Guards.  Id.; 32 U.S.C. § 709(f).  It provides, in relevant part: "Notwithstanding any other provision of law . . . a right of appeal which may exist with respect to [separation or discharge from employment] shall not extend beyond the adjutant general of the jurisdiction concerned."  32 U.S.C. § 709(f) (emphasis added).

The other statute at issue is the Labor-Management Act, a comprehensive legislative scheme regulating the organizational rights of federal employees.  It "embodies a statutory scheme . . . for the establishment of a law of labor-management relations for the federal public service analogous to that of the National Labor Relations Act in the private sector." Dep't of Navy v. Fed. Labor Relations Auth., 815 F.2d 797, 798 (1st Cir. 1987) (internal citations and quotation marks omitted).  It creates an administrative agency, the Authority, to administer the Act in a manner similar to the National Labor Relations Board.  Id.; 5 U.S.C. §§ 7104, 7105.  As in private industry,

the Act expressly protects the rights of federal employees "to form, join, or assist any labor organization, or to refrain from any such activity," id. § 7102, and causes certain actions by executive agencies (or labor organizations) to be deemed unfair labor practices, id. § 7116, against which the Authority may take appropriate administrative or judicial action, id. § 7123(b). Dep't of Navy, 815 F.2d at 798-99.

We agree with the Authority that the plain language of section 709(f)(4) of the Technicians Act categorically precludes review of technician terminations under the Labor-Management Act.[2] A "clearer statement" than the Technicians Act's "notwithstanding any other provision of law" language "is difficult to imagine." N.J. Air Nat'l Guard, 677 F.2d at 283. This "preemptive language is powerful evidence that Congress did not intend any other, more general, legislation, whenever enacted, to qualify the authority of the state adjutants general as set out in the Technicians Act." Id.

The Authority decided this issue squarely in Ill. Nat'l Guard and Ill. Air Chapter 34, Ass'n Civilian Technicians, Inc., 19 F.L.R.A. 101, 105 (1995), aff'd, Ill. Air Chapter 34, Ass'n

---

[2]Petitioners also complain that the Authority erred in failing to address the terminations of twenty-five other technicians, which took place after the ALJ ruled. For the same reasons that Romero's termination may not be reviewed, nor may those terminations.

<u>Civilian Technicians, Inc.</u> v. <u>Fed. Labor Relations Auth.</u>, No. 85-1579 (D.C. Cir. Oct. 23, 1986), holding that the Authority could not review in an unfair labor practice proceeding an allegation that a technician had been terminated for exercising rights protected by the Labor-Management Act. The Authority looked to the plain language of section 709, noting that Congress had emphasized that the adjutant general should have final authority over adverse personnel actions against technicians, regardless of what other laws provided. <u>Id.</u>

Other circuits have considered the intersection of the Labor-Management Act with the Technicians Act, although not in the specific context of unfair labor practices. In <u>N.J. Air Nat'l Guard</u>, the Third Circuit held that the appeal provision of section 709(f) made it clear that the Guard is not obligated to engage in collective bargaining. This is true, the court held, despite the subsequent enactment of the Labor-Management Act, which sets forth a collective bargaining system for federal employees. 677 F.2d at 280, 285. There is no evidence that Congress intended the general provisions of the Labor-Management Act to repeal or modify the specific reservation of authority set out in section 709(f) of the Technicians Act. <u>Id.</u> at 285. All of the other circuits considering this issue have similarly

-10-

held that the Technicians Act reserves exclusive review of personnel actions affecting technicians for the state adjutants general. Ind. Air Nat'l Guard v. Fed. Labor Relations Auth., 712 F.2d 1187 (7th Cir. 1983); Neb. Military Dep't, Office of Adjutant Gen. v. Fed. Labor Relations Auth., 705 F.2d 945 (8th Cir. 1983); Cal. Nat'l Guard v. Fed. Labor Relations Auth., 697 F.2d 874 (9th Cir. 1983).

The legislative history of the Technicians Act also supports the Authority's conclusion. This history evidences "serious congressional concern with ensuring the final authority of state adjutants general." N.J. Air Nat'l Guard, 677 F.2d at 283. In its report, the Senate Committee on Armed Services stated:

> This bill implements the purpose [of the legislation] by converting the technicians to Federal employee status with certain controls on administration and supervision which would as a matter of law remain at the State level. In effect, the technicians will become Federal employees receiving the salaries, fringe and retirement benefits, but with certain administrative control regarding employment supervision remaining with the adjutants general of the jurisdiction concerned under regulations prescribed by the Secretary concerned.

S. Rep. No. 90-1446, at 2 (1968). Accordingly, "section 709[(f)], which ensures the authority of the state adjutants general, can be viewed as a virtual quid pro quo for the section

-11-

709[(e)] grant of federal employee status." N.J. Air Nat'l Guard, 677 F.2d at 284.

In contrast, the Labor-Management Act's legislative history "do[es] not provide an affirmative expression of congressional intent to override the specific provision for exclusive review of section 709[(f)] matters by the state adjutants general in the technicians statute." Neb. Military Dep't, 705 F.2d at 951-52; see also N.J. Nat'l Guard, 677 F.2d at 285 (no reference to dual-status technicians in the Labor-Management Act's legislative history). While Congress could have altered the Technicians Act's limit on review procedures when it enacted the Labor-Management Act, it did not do so.

In attempting to evade the finality of section 709(f), the Union contends that this case does not involve an "appeal" within the meaning of that provision. The fact that an unfair labor practice proceeding begins with a "complaint" rather than an "appeal," however, is not a meaningful distinction. As have other courts considering the interaction between the Technicians Act and the Labor-Management Act, we will construe the term "appeal" broadly enough to include procedures that involve the review of terminations but are not technically described as "appeals." See, e.g., Cal. Nat'l Guard, 697 F.2d at 879

-12-

(holding that a negotiated grievance procedure effectively constitutes an appeal within the meaning of section 709(f)).

The Union also argues that First Amendment concerns modify the reach of the Technicians Act because Romero was terminated for participating in "protected activity."[3]  The protections at issue here are rooted in the Labor-Management Act, however; the Authority's jurisdiction extends only to statutory, not constitutional, claims.  See Nat'l Treasury Employees Union v. King, 961 F.2d 240, 243 (D.C. Cir. 1992) (holding that a union's constitutional claim was not adjudicable in the administrative proceeding before the Authority).  Therefore, there is no independent constitutional basis for petitioner's retaliatory termination claim.[4]

_____

[3]Romero filed an action in the district court alleging constitutional violations under 42 U.S.C. § 1983.  See Roig v. P.R. Nat'l Guard, 47 F. Supp. 2d 216 (D.P.R. 1999).  Despite an initial ruling that Romero's action seeking equitable remedies against the Guard was justiciable and that a preliminary injunction was warranted, the court ultimately dismissed the action, and no appeal was taken.  Although we express no opinion on the question, it appears that such an appeal might have been a more fruitful approach to vindicating Romero's constitutional rights.  See Wigginton v. Centracchio, 205 F.3d 504, 511-12 (1st Cir. 2000) (holding that a § 1983 action against the Adjutant General of Rhode Island Army National Guard and State of Rhode Island, seeking reinstatement to Guard, was justiciable).

[4]The Union correctly points out that when interpreting the Labor-Management Act, the Authority should "consider the constitutional implications of its choice between permissible interpretations of the Statute." Nat'l Treasury Employees Union v. Fed. Labor Relations Auth., 986 F.2d 537, 539 (D.C. Cir.

-13-

Because the Technicians Act deprived the Authority of jurisdiction, it could not review Romero's termination, despite the Guard's patent and egregious violations of the Labor-Management Act. We agree with the Authority that this result is unfortunate. As the Authority stated in its majority opinion, however, we cannot rewrite the statute:

> We recognize that the National Guard's immunity from prosecution in [unfair labor practice] proceedings or retaliatory discharges of civilian technicians leaves meaningful rights Congress provided technicians under the [Labor-Management Act] largely unenforceable. . . . Nevertheless, it is for Congress, not the Authority, to correct this injustice.

The Authority was thus constrained from remedying the termination, and we can take no further action. The Authority's final decision and order is **affirmed**, and, accordingly, the petition for review is denied and dismissed.

_____

1993). In this case, however, the Authority resolved a threshold jurisdictional issue based on the requirements of law external to the Labor-Management Act. It properly concluded that any constitutional questions raised in this case do not independently establish jurisdiction. Nor does the fact that the Civil Service Reform Act (CSRA) -- of which the Labor-Management Act is a part -- preempts judicial review of the technicians' constitutional claims provide the Authority with jurisdiction. The fact that a court will not hear a claim does not provide an agency with jurisdiction that it otherwise lacks, even if a party is left without a remedy. See Roth v. United States, 952 F.2d 611, 615 (1st Cir. 1991) (even though administrative agencies rejected claim for lack of jurisdiction, CSRA preempted court review of that claim).

-14-