Major General LIPSCOMB III, in his Official Capacities as the Adjutant General of the State of Mississippi, of the Mississippi Militia, of the Mississippi National Guard, and as the Executive Head of the Mississippi Military Department, and the Mississippi Militia, the Mississippi National Guard, and the Mississippi Military Department, Plaintiffs,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Nancy Speight, in her Official Capacity as Regional Director of the Federal Labor Relations Authority, Atlanta Region, and Linda J. Norwood, in her Former Official Capacity as Acting Regional Director of the Federal Labor Relations Authority, Atlanta Region, Defendants.

No. Civ.A. 401CV158LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 19, 2001.

Jeffrey A. Walker, Emerson Barney Robinson, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, T. Hunt Cole, Jr., Office of the Attorney General, Jackson, MS, for plaintiff or petitioner.

David M. Smith, William R. Tobey, William E. Persina, Federal Labor Relations Authority, Washington, DC, for defendant or respondent.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

There are pending at this time a motion by the plaintiffs for preliminary injunction and for summary judgment, and a motion by defendants to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Each has responded to the others' motion of the other, and having now considered the parties' memoranda of authorities with accompanying evidentiary submissions, and having considered the parties' arguments at the hearing on the motions, the court concludes that it does have jurisdiction over plaintiffs' claims, but that plaintiffs' complaint is due to be dismissed since, in the court's opinion, plaintiffs' claims for relief are without merit as a matter of law.

This action was filed by Major General James H. Lipscomb, III, Adjutant General of the State of Mississippi, in his official capacities As head of the Mississippi Militia and the Mississippi National Guard, and as Executive Head of the Mississippi Military Department, and by the Mississippi Militia, the Mississippi National Guard and the Mississippi Military Department against the Federal Labor Relations Authority (Authority), and the current and former regional directors of the Authority, Nancy Speight and Linda Norwood, respectively (to all of whom the court will refer collectively as the Authority), challenging as unconstitutional and on other grounds the Authority's order directing that an election be held to determine whether "[a]ll wage grade and general schedule employees employed by the Mississippi Army National Guard statewide" wish to be represented for purposes of collective bargaining by the Association of Civilian Technicians as their exclusive representative.

The Authority is a federal agency charged with the responsibility of administering the Federal Service Labor Relations Act (FSLRA), 5 U.S.C. § 7101 *et seq.*, the exclusive statutory scheme governing labor relations between federal agencies (other than those expressly excepted from the FSLRA) and their em-

ployees. In enacting the FSLRA, Congress found that "labor organizations and collective bargaining in the [federal] civil service are in the public interest," 5 U.S.C. § 7101(a),[1] and thus, as in private industry, the Act recognizes and protects the rights of federal employees "to form, join, or assist any labor organization, or to refrain from any such activity," *id.* § 7102, and causes certain actions by "executive agencies" (or labor organizations) to be deemed unfair labor practices, *id.* § 7116, against which the Authority may take appropriate administrative or judicial action, § 7123(b). *See American Federation of Gov't Employees, Local 3936, AFL—CIO v. Federal Labor Relations Auth.*, 239 F.3d 66, 70 (1st Cir.2001). As set forth in § 7105 of the Act, the Authority is charged with providing leadership in establishing poli-

cies and guidance relating to federal service labor-management relations and carrying out the purpose of the Act. Generally speaking, its duty is to ensure compliance with the statutory rights and obligations of federal employees, labor organizations and federal agencies. Among other things, the Authority is specifically charged with the responsibility of "(A) dertermin[ing] the appropriateness of units for labor organization representation under section 7112 of this title;[2] (B) supervis[ing] or conduct[ing] elections to determine whether a labor organization has been selected as an exclusive representative by a majority of the employees in an appropriate unit and otherwise administer[ing] the provisions of section 7111 of this title relating to the according of exclusive recognition to labor organizations;[3] ... and (I) tak[ing] such

1. The Act recites:
 Each employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right. Except as otherwise provided under this chapter, such right includes the right—
 (1) to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities, and
 (2) to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter.
 5 U.S.C. § 7102.

2. Section 7112 states, in part, that:
 (a) The Authority shall determine the appropriateness of any unit. The Authority shall determine in each case whether, in order to ensure employees the fullest freedom in exercising the rights guaranteed under this chapter, the appropriate unit should be established on an agency, plant, installation, functional, or other basis and shall determine any unit to be an appropriate unit only if the determination will en-

sure a clear and identifiable community of interest among the employees in the unit and will promote effective dealings with, and efficiency of the operations of the agency involved.

3. Section 7111 states, in pertinent part, as follows:
 (a) An agency shall accord exclusive recognition to a labor organization if the organization has been selected as the representative, in a secret ballot election, by a majority of the employees in an appropriate unit who cast valid ballots in the election.
 (b) If a petition is filed with the Authority—
 (1) by any person alleging—
 (A) in the case of an appropriate unit for which there is no exclusive representative, that 30 percent of the employees in the appropriate unit wish to be represented for the purpose of collective bargaining by an exclusive representative, or
 (B) in the case of an appropriate unit for which there is an exclusive representative, that 30 percent of the employees in the unit allege that the exclusive representative is no longer the representative of the majority of the employees in the unit; or
 (2) by any person seeking clarification of, or an amendment to, a certification then in effect or a matter relating to representation;

other actions as are necessary and appropriate to effectively administer the provisions of this chapter."

In April 2000, the Association of Civilian Technicians, a private union, filed a petition with the Authority seeking an election to determine if it should be the exclusive representative of "all wage grade and general schedule [technician] employees employed by the Mississippi Army National Guard statewide." Pursuant to 5 C.F.R. § 2422.17, the Mississippi National Guard (MSNG) made a request to the Authority for a hearing on the appropriateness of the proposed bargaining unit and "associated issues." The request was granted, and an evidentiary hearing was held in December 2000, following which defendant Norwood, the Authority's then-acting regional director, issued her decision and order on February 28, 2001, rejecting the MSNG's opposition and granting the union's petition for an election. MSNG sought review by the Authority pursuant to 5 C.F.R. § 2422.31, asserting constitutional and statutory challenges to the actions of the Authority and Norwood; Norwood's decision was upheld by a decision of the Authority, Washington, D.C. issued June 29, 2001. Thereafter, and upon being informed by an Authority official that the regional director intended to order a union election if the parties did not first agree to an election voluntarily, plaintiffs filed this lawsuit seeking declaratory and injunctive relief. Specifically, plaintiffs seek a declaratory judgment that (1) the Authority lacks subject matter jurisdiction over the underlying administrative proceeding because the Mississippi Army National Guard is not a federal agency within the meaning of the FSLRA; (2) the Authority's order of an election unconstitutionally compels a state agency to perform a federal function in violation of the Tenth Amendment and *Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), and in violation of the plaintiffs' Eleventh Amendment immunity; and (3) the employees here involved cannot be represented by a union because they are military personnel in a military organization and union representation would run afoul of the *Feres* doctrine. By their motion for preliminary injunction, plaintiffs seek to enjoin the Authority from carrying out its election.[4]

## DEFENDANTS' MOTION TO DISMISS

In response to plaintiffs' complaint, the Authority has moved to dismiss, taking the position that this court is without subject

---

the Authority shall investigate the petition, and if it has reasonable cause to believe that a question of representation exists, it shall provide an opportunity for a hearing (for which a transcript shall be kept) after reasonable notice. If the Authority finds on the record of the hearing that a question of representation exists, the Authority shall supervise or conduct an election on the question by secret ballot and shall certify the results thereof....

4. Specifically, plaintiffs have prayed for issuance of a preliminary injunction "maintaining the status quo pending the outcome of this action and prospectively prohibiting defendants from:
(1) enforcing the FSLRA against the Militia Plaintiffs;
(2) conscripting and dragooning the Militia Plaintiffs to enforce or administer the FLSRA and the Defendants' orders;
(3) forcing the Militia Plaintiffs to engage in collective bargaining with or to recognize any union;
(4) taking any enforcement action against the Militia Plaintiffs based on the matters at issue in this Action; and
(5) taking any action to hold a union election or otherwise process such a request with respect to the Militia Plaintiffs; or
In the Alternative
(1) requiring the Militia Plaintiffs to recognize any union containing, or to bargain with, any actual or prospective bargaining unit containing Military Technicians.

matter jurisdiction because Congress, by providing in the FSLRA an exclusive appeals process for those seeking review of an "appropriate unit determination" by the Authority, has foreclosed all other avenues of review of such determinations. It further submits that the case is not yet ripe for judicial review since there has as yet been no representation election and since the results of any such election may favor plaintiffs, with the result that they have to date suffered no cognizable harm and may never suffer harm. Defendant contends further that even if the court has jurisdiction, it still must dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted. As a matter of procedure, since defendant's motion calls into question the court's jurisdiction, it must be addressed first.

The Authority takes the position that in accordance with 5 U.S.C. § 7123, plaintiffs are expressly foreclosed from pursuing any direct challenge in this court to its decision pursuant to 5 U.S.C. § 7112 that the Mississippi Army National Guard's technicians constitute an "appropriate unit." [5] Section 7123 provides that

(a) Any person aggrieved by any final order of the Authority other than an order under—

. . .

(2) section 7112 of this title (involving an appropriate unit determination), may, during the 60–day period beginning on the date on which the order was issued, institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia.

Defendant maintains that the plain language of this statute bars direct judicial

review of Authority decisions involving appropriate unit determinations, such as it claims is the subject of this case, and that it operates to render inapplicable general jurisdictional grants which might otherwise provide original jurisdiction in the federal district courts.

 As is clear from the plain terms of the statute, Authority "appropriate unit determinations" are normally reviewable only where the dispute concerning the correctness of the Authority's determination "eventuates in a finding by the Board that an unfair labor practice has been committed as, for example, where an employer refuses to bargain with a certified representative on the ground that the election was held in an inappropriate bargaining unit." *Boire v. Greyhound Corp.*, 376 U.S. 473, 477, 84 S.Ct. 894, 896–97, 11 L.Ed.2d 849 (1964). Although this is the normal procedure for review, the courts have recognized "[t]hree 'extraordinary circumstances' requiring pre-election judicial review of a Board representation order . . . ." *Florida Board of Business Regulation, Dept. of Business Regulation, Div. of Pari–Mutual Wagering v. National Labor Relations Board*, 686 F.2d 1362 (11th Cir. 1982) (citing *Bishop v. NLRB*, 502 F.2d 1024, 1027 (5th Cir.1974)).

The first is when a case presents a "public question( ) particularly high on the scale of our national interest because of (its) international complexion." *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547 (1963). The second is when the plaintiff makes a clear and strong showing that the Board has violated his constitutional rights. *Squillacote v. Int'l Bhd. of Teamsters, Local 344*, 561 F.2d 31, 38 (7th Cir.1977); *McCulloch v. Libbey–Owens–Ford Glass Co.*, 403 F.2d 916, 917 (D.C.Cir.1968),

---

**5.** *See supra* note 2.

cert. denied, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969); *Greensboro Hosiery Mills, Inc. v. Johnston*, 377 F.2d 28, 32 (4th Cir.1967). *Cf. Fay v. Douds*, 172 F.2d 720 (2d Cir.1949) (alleged constitutional violation that is not transparently frivolous sufficient to invoke district court's subject matter jurisdiction to review representation order). The third is when the plaintiff asserts that the Board clearly acted "in excess of its delegated powers and contrary to a specific prohibition in the Act." *Leedom v. Kyne*, 358 U.S. at 188, 79 S.Ct. at 184.

*Florida Board*, 686 F.2d at 1369.[6] Defendant contends that none of these exceptions to the usual rule of no pre-election review applies, and that this court must therefore dismiss plaintiffs' complaint for want of jurisdiction. The court concludes otherwise.

In *Florida Board*, 686 F.2d 1362 (11th Cir.1982), the court rejected an argument similar to that advanced by the Authority in the context of a challenge to a NLRB order directing a representation election,[7] stating that "a plaintiff who cannot seek review of the Board's order in the Court of

---

**6.** The court in *Florida Board* explained the reason for the "extraordinary circumstances" rule, as follows:

> The extraordinary circumstances rule was fashioned to deal with time consuming pre-election challenges to Board orders which unduly delayed the choice of employee representations. When Congress passed the Act in 1935, it was particularly concerned that Board-ordered representations elections be held posthaste.
> When an employee organization has built up its membership to a point where it is entitled to be recognized as the representative of the employees for collective bargaining, and the employer refuses to accord such recognition, the union, unless an election can promptly be held to determine the choice of representation, runs the risk of impairment of strength by attrition and delay while the case is dragging on through the courts.
> *Boire v. Greyhound Corp.*, 376 U.S. at 478, 84 S.Ct. at 897, *quoting* H.R.Rep. No 972 74th Cong., 1st Sess. at 5 (1935). Congress therefore provided that employers and labor unions could not seek direct review of Board election orders in the Court of Appeals until the election had been held and the Board had certified the result and entered a bargaining order.

*Id.* at 1369 (additional citations omitted). The court noted that Congress intended that Board representation election orders be reviewed by the Court of Appeals after the election and after the employer refused to bargain with the union. The employer's initial challenge to the Board representation election order would be made before the Board, when the employer responded to the union's unfair

labor practice charge. If the Board affirmed its earlier election order and concluded that the employer was guilty of an unfair labor practice, the employer could then seek review of the Board's decision, including its election order, in the Court of Appeals. *See* §§ 9(d) and 10(f) of the Act, 29 U.S.C. §§ 159(d) and 160(f). *See also Boire v. Greyhound Corp.*, 376 U.S. at 477, 84 S.Ct. at 896–97.

*Id.* at 1369 n. 13. The court went on to explain, Congress did not expressly bar employers and unions from seeking pre-election review in district court, however, and they frequently turned to the district court for relief. *Leedom v. Kyne* questioned the validity of this tactic, and the Supreme Court held that the district courts had subject matter jurisdiction to entertain these suits and to review the Board's representation orders. 358 U.S. at 188, 79 S.Ct. at 183–84. The Court later qualified this holding in *Boire v. Greyhound Corp.*, 376 U.S. at 478–79, 84 S.Ct. at 897–98, to prevent attempts by an employer or a rival union to use the district court merely as a weapon to delay a Board-ordered election. Only in extraordinary circumstances, the Court concluded where the need to hear the case immediately is manifest, is the district empowered to enjoin an election and to review an election order. *Id.* at 479–80, 84 S.Ct. at 898.

*Id.* at 1369.

**7.** The Authority's role and function in administering the FSLRA are analogous to those of the National Labor Relations Board in the private sector under the NLRA. *American Federation of Gov't Employees, Local 3748 v. FLRA*, 797 F.2d 612, 613 (8th Cir.1986).

Appeals but who claims that the Board violated his federal rights has the right to repair to the district court under any statute that may grant the district court the power to hear his claim." *Id.* at 1370 (citing *Leedom v. Kyne,* 358 U.S. 184, 190, 79 S.Ct. 180, 184, 3 L.Ed.2d 210 (1958)). In *Florida Board,* the State of Florida filed suit in federal district court to enjoin a representation election ordered by the NLRB and to obtain a declaratory judgment that the NLRB lacked authority over labor disputes involving jai alai players in Florida on the bases, *inter alia,* that the Board lacked jurisdiction under the National Labor Relations Act, (§ 14(c)(1)) and that the Tenth Amendment barred Board regulation of labor disputes in the state-regulated jai alai industry. *Id.* at 1366. Citing *Boire v. Greyhound Corp.,* 376 U.S. 473, 479, 84 S.Ct. 894, 898, 11 L.Ed.2d 849 (1964) and *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Board argued that although the district courts have subject matter jurisdiction to enjoin the execution of a representation election order in certain "extraordinary circumstances," such circumstances were not present and the court thus lacked subject matter jurisdiction. The court agreed

that "[a]s to [the] prayer for [injunctive] relief the Board's position [was] correct, for the extraordinary circumstances rule of *Greyhound* and *Leedom* was clearly applicable." However, the court held that there was jurisdiction over the additional claim for declaratory relief, as to which the court stated:

> We are convicted that the rule of *Boire v. Greyhound Corp.* and *Leedom v. Kyne* is inapposite and that the district court had subject matter jurisdiction under § 1331 (1978 Supp.) to entertain the State's suits against the Board.... [T]he State's complaint asked for more than an injunction against a Board election order; it sought a declaration that the Board lacked statutory and constitutional authority to regulate labor disputes in the jai alai industry as a whole. As to this prayer for relief, the extraordinary circumstances rule has no application.

*Florida Bd.,* 686 F.2d at 1368.[8] In keeping with *Florida Board,* which this court considers to provide the appropriate analysis for the case at bar,[9] while this court may not have jurisdiction over plaintiffs' claim for injunctive relief, it does have jurisdiction over plaintiffs' claims for declaratory relief.[10]

**8.** Defendant undertakes to distinguish *Florida Board* on the basis that the plaintiff was the State of Florida, not the actual employer, and that the State of Florida, not being a party to the Board proceeding, would not have had standing or the ability to pursue remedies via the appeals process established by the statute. While that is certainly a distinction, so far as this court can tell, it is not a distinction that influenced the court's decision in *Florida Board.* Indeed, the fact that the State would have lacked standing did not cause the court to consider its claim for injunctive relief, which it found was not within the court's jurisdiction; and as to the claim for declaratory relief, the court declared, without limitation, that the extraordinary circumstances rule had "no application" so that the claim was cognizable in the district court.

**9.** The Authority maintains that *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938), mandates a contrary result. The court is not persuaded. The *Florida Board* decision, rendered nearly 45 years after *Myers,* more directly addresses the issue here presented and thus is more pertinent to the court's inquiry.

**10.** Plaintiffs contend this case falls within the *Leedom v. Kyne* "extraordinary circumstances" exception in any event; defendant maintains that this narrow exception is not implicated. *See Griffith v. FLRA,* 842 F.2d 487, 494–95 (D.C.Cir.1988) (stating with respect to *Leedom v. Kyne,* "We have said that review may be had only when the agency's error is 'patently a misconstruction of the Act,' or when the agency has 'disregarded a specific and unambiguous statutory directive,' or when the agency has 'violated some specif-

■ In a related vein, defendant argues that plaintiffs' claims are not ripe for review, as a consequence of which this court lacks jurisdiction. In this regard, it submits that the Authority's determination here, i.e., that the bargaining unit proposed by the union is appropriate, does not complete the representation process now pending before the Authority, and that until such time as the Authority actually conducts the election to determine whether the employees in the unit wish to be represented by the union and ultimately determines whether to certify the results of the election, the administrative process is not complete. It further contends that the Mississippi Army National Guard would be required to actually enter into collective bargaining with the union only if the Authority certifies that the union has received a majority of the votes in an election and that otherwise, the Mississippi Army National Guard will have no bargaining obligation, so that plaintiffs have thus not yet suffered any injury in fact, and may never suffer any injury in the event the union fails to achieve a majority vote.

In the court's opinion, the plaintiffs' challenge to the Authority's jurisdiction in the face of an assertion of such jurisdiction constitutes a presently justiciable controversy. *Cf. Florida Bd. of Business Regulation v. N.L.R.B. (Florida Board I)*, 605 F.2d 916, 918–19 (5th Cir.1979) ("[T]he question of the mootness of the State's claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 (1976), becomes ' "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." ' "). In the analogous context of a mootness issue in *Florida Board I*, the court concluded that a challenge to a representation election order was cognizable, despite the fact that the election had been conducted and the union had failed to achieve a majority vote. The court noted that in view of "the breadth of the Board's assertion of jurisdiction, there is certainly a reasonable expectation that the State's alleged interest in the jai alai industry will be threatened by such orders in the future." *Id.* at 920. Likewise, here, the plaintiffs' objection to the Authority's jurisdiction exists as a live controversy, regardless of the current state of the administrative proceedings. In fact, it is *the fact* that the plaintiffs are being put through the administrative proceedings which renders their claim justiciable. Accordingly, the court rejects defendant's challenge to this court's jurisdiction over the present controversy.

## PLAINTIFFS' MOTION TO DISMISS/DEFENDANT'S SUMMARY JUDGMENT MOTION

■ Having resolved that it has jurisdiction to proceed, the court now turns to the parties' substantive positions. As indicated *supra*, plaintiffs seek a declaratory adjudication that the Authority may not validly order a representation election, in support of which they advance essentially four arguments. They contend, (1) that the Authority lacks jurisdiction over the underlying administrative proceeding because the Mississippi Army National Guard is not a federal agency within the meaning of the FSLRA, and because the Adjutant General, who actually is vested with sole authority with respect to matters

---

ic command' of a statute. Garden-variety errors of law or fact are not enough.") (citations omitted). While it is not clear that plaintiffs' position in this regard is patently without merit, as defendant contends, the court finds it unnecessary to decide whether the *Leedom* exception may properly be applied to this case.

of technicians' employment, is not a federal agency either, but rather is a state officer; (2) that in accordance with the Supreme Court's opinion in *Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), it is manifest that the Authority's order violates the Tenth Amendment in that it impermissibly purports to compel a state agency to perform a federal function, and further is in derogation of the plaintiffs' immunity under the Eleventh Amendment; and finally (3) that the Authority's actions violate the *Feres* doctrine because technicians—or dual status technicians—are military personnel in a military organization with whom the military defendants cannot be compelled to engage in collective bargaining.

Defendant, on the other hand, contends that the MSNG, while a state agency, is also a federal agency for purposes of application of the FSLRA, and that the Adjutant General, while a state officer, is by law charged with employing and administering the employment of guard technicians and in that respect, functions in a federal capacity. The Authority concludes, therefore, that the MSNG and the Adjutant General are subject to the jurisdiction of the Authority, and that the Authority's exercise of that jurisdiction is violative of neither the Tenth nor Eleventh Amendment. For the reasons which follow, the court agrees.

This case finds the parties and the court at the intersection of the FSLRA and the National Guard Technicians Acts, 32 U.S.C. § 709 *et seq*, and a determination of the direction in which the court should proceed requires an understanding not only of the purpose of the FSLRA and the Authority's responsibility to covered employees, but also of the role of the National Guard and the employment status of Guard technicians. A succinct explanation of the latter was provided in *New Jersey National Guard v. Federal Labor Rela-*

*tions Authority*, 677 F.2d 276, 278–79 (3d Cir.1982), in which the court stated:

> The National Guard occupies a unique position in the federal structure. It is "an essential reserve component of the Armed Forces of the United States, available with regular forces in time of war," and "also may be federalized in addition to its role under state governments, to assist in controlling civil disorders," *Gilligan v. Morgan*, 413 U.S. 1, 7, 93 S.Ct. 2440, 2444, 37 L.Ed.2d 407 (1973). As the successor to the state militias of the nation's early years, *see Maryland v. United States*, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965), the Guard fills a role recognized and provided for in the Unites States Constitution. Art. I, § 8, cl. 16; amend. II. This role does not fit neatly within the scope of either state or national concerns; historically, the Guard has been, and today, remains, something of a hybrid. Within each state the National Guard is a state agency, under state authority and control. At the same time, the activity, makeup, and function of the Guard is provided for, to a large extent, by federal law.

> Mirroring this special posture of the Guard is the sui generis status of its employees. In addition to purely military personnel, the Guard employs civilians to perform a wide range of administrative, clerical, and technical tasks. Often the responsibilities and duties of these employees, who are generally referred to as National Guard technicians, correspond directly to those of other civilian employees, yet they arise in a distinctly military context, implicating significant military concerns. *See, e.g., NeSmith v. Fulton*, 615 F.2d 196, 201 (5th Cir.1980).

> To accommodate the civilian interests of these employees without intruding on the Guard's military and security needs, and to recognize by statute the special

employee status that had evolved informally, Congress in 1968 enacted the National Guard Technician Act, 32 U.S.C. § 709. In that Act, all Guard technicians, who had previously been employees of the states, were declared to be federal employees, and were thereby afforded the benefits and rights generally provided for federal employees in the civil service. 32 U.S.C. § 709(d). The Act imposed special reservations to that federal civilian status, however. Specifically, Guard technicians were required to serve simultaneously as members of the National Guard, *id.* at § 709(b). . . .

In addition, while the Technicians Act recognized technicians as federal employees, Congress reserved "exclusive review of personnel actions affecting technicians for the state adjutants general," *American Fed. Gov't Employees, Local 3936,* 239 F.3d at 71 (observing that "[t]he legislative history of the Technicians Act . . . evidences 'serious congressional concern with ensuring the final authority of state adjutants general' ") (quoting *New Jersey Air Nat'l Guard v. Fed. Labor Relations Auth.,* 677 F.2d 276, 283 (3d Cir.1982)), giving him the exclusive authority, *inter alia,* to separate a technician from his employment at any time for cause, and to accomplish "a reduction in force, removal, or an adverse action involving discharge from technician employment, suspension, furlough without pay, or reduction in rank or compensation." 32 U.S.C. §§ 709(f)(3), (f)(4). *See also New Jersey Air Nat. Guard v. Federal Labor Relations Auth.,*

677 F.2d 276, 284 (3d Cir.1982) ("[S]ection 709[ (f)], which ensures the authority of the state adjutants general, can be viewed as a virtual quid pro quo for the section 709[ (e)] grant of federal employee status.' "); [11]; *See also Singleton v. Merit Systems Prot. Bd.,* 244 F.3d 1331, 1333 (Fed. Cir.2001) (same explanation) (citing *Special Counsel v. Everett,* 28 M.S.P.R. 348, 350 (1985)).

From the foregoing, a number of matters are clear beyond dispute, including the "hybrid" federal/state status of the MSNG, the status of National Guard technicians as federal employees and the states' adjutants general's responsibility for administering the Technicians Act and their authority over matters relating to the employment of guard technicians. It also seems clear beyond dispute that every court that has considered the issue has held that national guard technicians, as federal employees who are not excluded from coverage of the FSLRA, fall within the coverage of that Act and thus have the right to choose union representation. *See, e.g., Association of Civilian Technicians, Schenectady Chap. v. Federal Labor Relations Auth.,* 230 F.3d 377, 378 (D.C.Cir. 2000) (observing that "[a]s federal 'employees' (5 U.S.C. § 2105(a); 32 U.S.C. § 709(d)), the Guard's civilian technicians are entitled to engage in collective bargaining regarding certain subjects"); *New York Council, Ass'n of Civilian Technicians v. Federal Labor Relations Auth.,* 757 F.2d 502, 508 (2d Cir.1985) (noting that "[t]the labor relations of federal em-

---

**11.** *See American Fed. Gov't Employees, Local 3936,* 239 F.3d at 71, in which the court quoted from the report of the Senate Committee on Armed Services relating to the Technicians Act:

'This bill implements the purpose [of the legislation] by converting the technicians to Federal employee status with certain controls on administration and supervision which would as a matter of law remain at the State level. In effect, the technicians will become Federal employees receiving the salaries, fringe and retirement benefits, but with certain administrative control regarding employment supervision remaining with the adjutants general of the jurisdiction concerned under regulations prescribed by the Secretary concerned.'

*Id.* (quoting quoting S.Rep. No. 90–1445, at 2 (1968)).

ployees are ... regulated by Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. s 7101 *et seq.*, which requires agencies to bargain with their employees over the conditions of employment subject only to express statutory exceptions," and applying the Act to guard technicians); *New Jersey Air Nat'l Guard*, 677 F.2d at 281 (stating that although the FSLRA exempts the employees of certain executive agencies from its coverage, it "makes no reference whatsoever to the National Guard or National Guard technicians, and the technicians therefore fall within the implicit coverage of the Act.") [12] And yet despite the countless cases recognizing this right, either explicitly or implicitly, plaintiffs in the case at bar maintain that the MSNG is not a "federal agency" under the FSLRA, and that even if it were, the MSNG does not employ or administer technicians' employment; rather, that function is committed to the sole authority of the Mississippi Adjutant General, who, himself being a state officer, is not subject to the FSLRA and hence is not subject to the jurisdiction of the Authority.

In the court's opinion, contrary to plaintiffs' contention, the MSNG is a federal agency for purposes of the FSLRA. The parties acknowledge that the obligations imposed by the FSLRA extended only to federal agencies. And as defendant notes, the statute defines "agency" to mean an "Executive agency," 5 U.S.C. § 7103(a)(3), which is in which is in turn defined as "an Executive department, a Government corporation, and an independent establish-

ment." 5 U.S.C. § 105. The Department of Defense is an "executive department," *see* 5 U.S.C. § 101, and 10 U.S.C. § 111(a); and the Department of the Army is a component of the Department of Defense, *see* 10 U.S.C. § 111(b)(6). The Department of the Army consists of the Regular Army, the Army National Guard of the United States, the Army National Guard while in service of the United States and the Army Reserve, *see* 10 U.S.C. § 3062(b)–(d); and the Army National Guard of the United States is the reserve component of the Army that consists in relevant part of the "federally recognized units and organizations of the Army National Guard," *see* 10 U.S.C. § 10105. As it is indisputably "a federally recognized unit[ ] and organization of the Army National Guard," the Mississippi Army National Guard (which is a subset of the MSMG), is thus an element of the Army National Guard of the United States, and hence falls within the definition of "activity" of an "agency," within the meaning of § 7103(a)(3) of the FSLRA, which extends to federal agencies and to "activities" of federal agencies. *See* 5 C.F.R. § 2421.4 ("Activity means any facility, organizational entity, or geographical subdivision or combination thereof, of any agency.").

Although plaintiffs dispute that the MSNG is a federal agency, they argue even more vigorously that irrespective of the status of the MSNG, the Adjutant General, who has sole authority with respect to the employment of technicians, is a state, not federal officer; and toward

---

**12.** *See also National Federation of Federal Employees, Local 1623 v. Federal Labor Relations Auth.,* 852 F.2d 1349, 1350 (D.C.Cir. 1988), in which the court explained:

National Guard technicians are both civilian employees and enlistees in National Guard units. The two worlds they simultaneously inhabit are understandably governed by very different rules of employee-employer relations. As members of the Guard, technicians are subject to military authority; as civilian employees, they are covered by the Federal Service Labor–Management Relations Statute, 5 U.S.C. §§ 7101 *et seq.* (1982 & Supp. IV 1986) ("the Labor–Management Act") which permits them to bargain over conditions of their employment. 5 U.S.C. § 7103(a)(14)(C) (1982).

proving this preposition, they point out that by state statute, the Adjutant General is the "[e]xecutive head of the [Mississippi Military] department, and, as such, subordinate only to the governor in matters pertaining thereto," Miss.Code Ann. § 33-3-3, and that he is also the chief military officer of the various parts of the Mississippi Militia, and thus is "[s]ubordinate only to the Governor in matters affecting the ... militia of this state," Miss.Code Ann. § 33-3-7.

In fact, if it manifest, as plaintiffs contend, that the Adjutant General is a state officer. But defendants have not contended otherwise. Rather, defendants take the position that in employing and administering technicians under the Technicians Act, 32 U.S.C. § 709, the Adjutant General by federal law acts as the designee of the federal service secretaries pursuant to 32 U.S.C. § 709(d), and thus for purposes of compliance with the FSLRA, adjutants general, by federal law, act as the "duly authorized representatives" of the federal service secretaries.

Having reviewed what the court considers the relevant authorities, this court rejects plaintiffs' attempt to have it focus entirely on the Adjutant General's status as a state officer, in disregard of his duties and responsibilities as a federal employer. To accept plaintiffs' position in this case would be to ignore the indisputable fact that the Adjutant General's position vis-a-vis technicians' employment is governed by federal law, which in the court's opinion, fully supports the Authority's position that in his capacity as the employer of these federal employees, the Adjutant General acts as a federal employer; and in that capacity, he, like other nonexcepted federal employees, is subject to requirements of the FSLRA. In other words, just as the MSNG is a "hybrid" entity, existing as both a state and federal entity, sc, too, is the Adjutant General's position properly viewed as "hybrid" in that he performs certain functions, namely, employment of technicians, in a federal capacity.

Indeed, just as the courts have consistently recognized that states' National Guards are federal agencies for purposes of the FSLRA, they have similarly recognized time and again that adjutants general are "hybrid federal and state officials," who function in a federal capacity, i.e., as a federal agent, in their role of employing and administering technicians' employment. For example, in *NeSmith v. Fulton*, 615 F.2d 196, 199 (5th Cir.1980), the Fifth Circuit specifically found that Georgia's Adjutant General was a federal agency with respect to technicians' employment. The court stated,

It is true that an adjutant general is at least in part a state officer. In *Davis v. Vandiver, supra,* 494 F.2d at 832, we observed:

The principal purpose of the National Guard Technicians Act of 1968, 32 U.S.C. § 709 *et seq.,* was to create a bifurcated nature of technician employment to confer *federal* status on civilian technicians while granting administrative authority to *State* officials, headed in each state by the Adjutant General. (Emphasis in original.)

The legislative history of the National Guard Technicians Act also states clearly that Congress viewed the adjutants general as state officers. House Report No. 1823 stated that the authority of the adjutants general under 32 U.S.C. § 709 to employ and administer the civilian technician program was intended to

(a) recognize the State character of the Guard and (b) meet the requirement of giving the adjutants general (who are State officers) the statutory function of employing federal employees. H.R.Rep. No. 1823, 90th Cong.2nd Sess. (1968); 1968 U.S.Code

Cong. & Admin. News, pp. 3318, 3330.

However, that an adjutant general is a state officer does not preclude his simultaneously being a *federal agency.* The Third Circuit, in *Chaudoin v. Atkinson, supra,* 494 F.2d at 1329, held that although an adjutant general was a state rather than a federal officer unless called into active service, he was also an "agency or agent" of the United States because "32 U.S.C. § 709 charges ... (him) with employment and administration of the civilian technicians who are federal employees." *See also Vargas v. Chardon,* 405 F.Supp. 1348, 1351–52 (D.P.R.1975). The conclusion that an adjutant general is a federal agency as well as a state officer reflects the hybrid state-federal character of the National Guard and of the role of adjutants general in administering it. We therefore adopt it and find NeSmith's appeal timely because brought in a suit to which a federal agency is a party.

*NeSmith v. Fulton,* 615 F.2d 196, 199–200;[13] *See also Gilliam v. Miller,* 973 F.2d 760, 762 (9th Cir.1992) (stating, "We agree that the [Oregon Adjutant General's] personnel actions as supervisor over the federal civilian technicians are taken in the capacity of a federal agency."); *cf. Holdiness v. Stroud,* 808 F.2d 417, 421 (5th Cir.1987) (§ 1983 action, in which court stated that "although the National Guard Technician's Act confers federal status on civilian technicians 'while granting administrative authority to State officials, headed in each scale by the Adjutant General,' by virtue of the hybrid character of the Guard, the Adjutant General is, at least for some purposes, simultaneously a federal agent."); *Chaudoin v. Atkinson,* 494 F.2d 1323, 1329 (3d Cir.1974) (holding that although the adjutant general of the state is not a "federal officer" for purposes of the mandamus statute giving federal courts jurisdiction to compel such officer to perform his duties, 28 U.S.C. § 1361, nevertheless, given that the Technicians Act, 32 U.S.C. § 709, "charges the adjutant generals with employment and administration of the civilian technicians who are federal employees ...[,] there can be no doubt that the Adjutant General of Delaware is an agency or an agent of the United States and therefore within the purview of § 1361."); *Vargas v. Chardon,* 405 F.Supp. 1348, 1351 (D.P.R.1975) (stating that although the defendant (adjutant general) is a state appointed officer, he in fact administers a federally funded activity and pursuant to regulations issued by the National Guard Bureau and as stated in (terminating the defendant's employment as a National Guard Technician)[,] the defendant acted as an agent of the Federal Government and therefore under color of federal not state law.); *cf. Perpich v. Department of Defense,* 496 U.S. 334, 347, 110 S.Ct. 2418, 2426 (1990) (recognizing that the dual system of the federal and state National Guard program remains unchallenged).[14] The court is of the opinion that

---

**13.** *NeSmith* was a § 1983 action brought by a dual-status technician challenging his dismissal from his technician position and the denial of military reinlistment in the Georgia Air National Guard. Among those named as defendants by NeSmith was the adjutant general of Georgia.

**14.** While there are certainly a rather substantial number of opinions which identify states' adjutants general as "state actors"—typically in the context of § 1983 actions—the plaintiffs have not identified a single case holding that adjutants general are *exclusively* state agents/actors. Plaintiffs place great emphasis on the Supreme Court's statement in *Perpich* that although guard members have three "hats"—a civilian hat, a state militia hat, and an army hat—"only one [of those hats can be] worn at a particular time," 496 U.S. 334, 348, 110 S.Ct. 2418, 2426–27, 110 L.Ed.2d 312, suggesting that an adjutant general, who is at all times a state officer, cannot simultaneously

the Authority may properly assert jurisdiction over the MSNG and the Adjutant General.[15]

In sum, it is impossible to recognize and give effect to the right of technicians as federal employees "to form, join, or assist any labor organization" without recognizing that in his role as their employer, the MSNG and/or the Adjutant General is a federal employer. The court, of course, is cognizant of the concerns which plaintiffs have expressed regarding the Authority's usurpation of the Adjutant General's authority; but in the court's opinion, these objections are not well founded as an objection in the context of a representation proceeding. The Authority has routinely addressed the issue of the authority of adjutants general under the Technicians Act as an issue of negotiability—or rather nonnegotiability—and has consistently refused to require collective bargaining over those matters reserved to the adjutants general. *See, e.g., New Jersey Air Nat'l Guard v. Federal Labor Relations Authority,* 677 F.2d 276 286 (3d Cir.1982) (recognizing that Guard technicians are federal employees and hence within the scope of the FSLRA, but holding that the Guard cannot be required to negotiate as to those matters which the Technicians Act has committed to the discretion of the state adjutants general); *State of Neb., Military Dept., Office of Adjutant General v. Federal Labor Relations Auth.,* 705 F.2d 945, 951 (8th Cir.1983) (observing that The FSLRA's legislative history "do[es] not provide an affirmative expression of congressional intent to override the specific provision for exclusive review of section 709 [ (f) ] matters by the state adjutants general in the technicians statute," and that Congress did not alter the Technicians Act's limit on review procedures when it enacted the FSLRA, and that as a consequence, matters covered by § 709(f) of the Technicians Act were nonnegotiable). Simply put, it does not follow from the fact that there are matters over which adjutants general cannot be compelled to collectively bargain, that technicians, in the exercise of their right as federal employees, cannot choose to unionize and collectively bargain over matters that are negotiable.

For a similar reason, the court rejects plaintiffs' contention that the *Feres* doctrine and the considerations which animate the doctrine preclude the Authority's exertion of jurisdiction over the MSNG and/or the Adjutant General. As the courts and the Authority have recognized, military aspects of technicians' employment are not subject to negotiation. *See, e.g., Association of Civilian Technicians, Texas Lone Chapter 100 v. Federal Labor Relations*

---

be a federal agent. It occurs to the court that plaintiffs read too much into this statement, and that they wholly fail to take into account that the adjutant general is the employer of these federal employees 365 days a year.

**15.** Plaintiffs rely on *Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), in support of their contention that the Authority's exercise of jurisdiction over the MSNG and/or the Adjutant General violates the Tenth Amendment. *Printz* concerned the Brady bill, which required local law enforcement agencies to enforce federal gun control laws. The Court held the law

unconstitutional, stating, "Congress cannot compel the States to enact or enforce a federal regulatory program." 521 U.S. at 895, 117 S.Ct. 2329. However, the conclusion that the MSNG and the Adjutant General function as federal agencies in administering the Technicians Act renders *Printz* inapposite. Here, there is no effort to compel the MSNG or the Adjutant General, in its/is capacity as state agents or officers, to enforce the FSLPA, but rather, the Authority's purpose is to compel a federal agency to comply with obligations imposed by federal law. For the same reason, plaintiffs' Eleventh Amendment argument fails.

*Auth.*, 250 F.3d 778 (D.C.Cir.2001) (recognizing that "National Guard technicians may not negotiate over military aspects of civilian employment." and upholding Authority's determination that military regulation prohibiting "grade inversion" rendered Union's proposal in derogation of that regulation nonnegotiable as a matter of law); *Association of Civilian Technicians v. Federal Labor Relations Auth.*, 780 F.2d 12 (7th Cir.1985) ("Under § 7106(b)(1) [of the Technician Act] ... the Guard may elect not to negotiate with civilian technicians on the subject of 'technology, methods, and means of performing work.' Pursuant to § 7105(a)(2)(E), civilian technicians may challenge the Guard's refusal to negotiate on a matter by petitioning the [FLRA] for a negotiability determination."); *Association of Civilian Technicians, Schenectady Chap.*, 230 F.3d at 378 (recognizing that "[f]or obvious reasons, Congress made it illegal for [technicians] to bargain over the terms and conditions of military service"); *New York Council, Ass'n of Civilian* Technicians, 757 F.2d 502 (while recognizing rights of technicians under FSLRA, holding that certain matters, such as Guard's requirement that technicians wear military attire, was nonnegotiable). But that does not mean that technicians are precluded from organizing and bargaining over civilian aspects of their employment.

## CONCLUSION

For all of the foregoing reasons, the court concludes that plaintiff's complaint for declaratory relief is not well taken and that their complaint must therefore be dismissed. Therefore, it is ordered that defendant's motion to dismiss, to the extent it challenges this court's jurisdiction, is not well taken and is denied, but that plaintiffs' complaint, is dismissed.

A separate judgment will be entered in accordance with Rule 53 of the Federal Rules of Civil Procedure.