230 F.3d 377 (D.C. Cir. 2000)
 Association of Civilian Technicians, Schenectady Chapter, Petitioner
v.
Federal Labor Relations Authority, Respondent
 No. 99-1476
 United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued September 12, 2000
Decided November 7, 2000
 
 On Petition for Review of a Decision and Order of the Federal Labor Relations Authority
 Daniel M. Schember argued the cause and filed the briefs for petitioner.
 Judith A. Hagley, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With her on the brief were David M. Smith, Solicitor, and William R. Tobey, Deputy Solicitor.
 Before: Henderson, Randolph, and Garland, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Randolph.
 Randolph, Circuit Judge:
 
 
 1
 "The National Guard has the dual mission of serving both the state in which the Guard unit is located and the federal government. The Guard stands ready to preserve peace and order at the command of state authorities; and to provide combat-ready units and to control domestic violence at the President's discretion. See Perpich v. Department of Defense, 496 U.S. 334, 110 S. Ct. 2418, 110 L. Ed. 2d 312 (1990). Because the National Guard is not a full-time active force, it employs civilian 'technicians' to perform administrative, clerical, and technical tasks. These individuals are generally required to be members of the National Guard unit in which they are employed (32 U.S.C. § 709(b)), and must wear their military uniforms while they are working. See National Guard Bureau Technician Personnel Reg. No. 300, p 7-6 (1987); New York Council, Ass'n of Civilian Technicians v. FLRA, 757 F.2d 502, 505-06 (2d. Cir. 1985).As federal 'employees' (5 U.S.C. § 2105(a); 32 U.S.C. § 709(d)), the Guard's civilian technicians are entitled to engage in collective bargaining regarding certain subjects. 5 U.S.C. §§ 7102, 7103(a)(2) & (a)(3); American Fed'n of Gov't Employees, Local 2953 v. FLRA, 730 F.2d 1534 (D.C. Cir. 1984)." United States Dep't of Defense v. FLRA, 982 F.2d 577, 578 (D.C. Cir. 1993).
 
 
 2
 When called to active duty, as they are with some frequency, these "dual-status" technicians lose their civilian status and become members of the armed forces. For obvious reasons, Congress made it illegal for them or their union to bargain over the terms and conditions of military service. 10 U.S.C. § 976(c). The issue in this case is whether, in view of § 976(c), the Federal Labor Relations Authority correctly refused to order bargaining over the following proposal sponsored by the technicians' union:
 
 
 3
 If the [National Guard Bureau] decides to afford bargaining unit technicians an opportunity to request leaveunder 5 U.S.C. § 6323(d), the [National Guard Bureau]shall inform them of that opportunity solely by written general announcement, such as a bulletin board posting.The announcement shall not identify by name, position, or any other individual identifier, any technician eligiblefor the opportunity. The general announcement maystate the number of technicians to whom the opportunity applies and the knowledge, skills, and abilities technicians must have to be eligible for the opportunity. Theannouncement shall state that the opportunity is volun-tary. The Agency shall not--and the announcementshall state that the Agency will not--coerce, pressure, orpersonally ask any technician to volunteer, and will notimpose any adverse consequence, of any kind, on anytechnician, for choosing not to volunteer. If a technicianin response to the general announcement expresses tothe Agency interest in considering the opportunity af-forded, the Agency thereafter may communicate directlywith the technician concerning that opportunity.
 
 
 4
 The dual-status technicians here belong to the 109th Tactical Airlift Wing based in upstate New York. In late 1995, the 109th became responsible for performing airlift operations for scientific expeditions in Antarctica, missions for which dualstatus technicians may be called into active duty to fly with the aircraft they maintain. Technicians called to active duty receive regular military pay plus any available civilian pay.Or they may volunteer for special pay status, entitling them to leave with pay from their federal civilian technician jobs for up to 44 days, but no military pay. See 5 U.S.C. § 6323(d)(1);10 U.S.C. § 12315(a). The bargaining proposal put forward by the technicians' union--the Association of Civilian Technicians, Schenectady Chapter--would govern how the National Guard Bureau informs dual-status technicians of their eligibility to volunteer for active duty by taking leave from their civilian posts, a special pay status entitling them only to their civilian salaries while on leave pursuant to 5 U.S.C. § 6323(d).Among other things, the proposal requires the Guard Bureau to inform dual-status technicians of this "opportunity" through a written posting rather than face-to-face, and to avoid placing pressure on any technicians to volunteer.
 
 
 5
 The FLRA found the proposal non-negotiable because it related to a military assignment and would invite bargaining over a military decision, in violation of 10 U.S.C. § 976(c).(The FLRA's alternative statutory basis for its decision is unnecessary to describe because it has been abandoned. See Association of Civilian Technicians Texas Lone Star Chapter 100, 55 F.L.R.A. 1226 (2000).) Section 976(c) is a criminal statute. The FLRA does not administer the provision; its interpretation thus deserves no special respect. See National Ass'n of Gov't Employees v. FLRA, 179 F.3d 946, 950 (D.C. Cir. 1999); see also Illinois Nat'l Guard v. FLRA, 854 F.2d 1396, 1400 (D.C. Cir. 1988); New Jersey Air Nat'l Guard, 177th Fighter Interceptor Group v. FLRA, 677 F.2d 276, 28182 n.6 (3d Cir. 1982).
 
 
 6
 In the language of § 976(c)(2), no one may bargain or negotiate over the "terms or conditions of service of" "member[s] of the armed forces." The phrase "a member of the armed forces" is defined as:
 
 
 7
 (A) a member of the armed forces who is serving onactive duty, (B) a member of the National Guard who isserving on full-time National Guard duty, or (C) a mem-ber of a Reserve component while performing inactive-duty training.
 
 
 8
 10 U.S.C. § 976(c)(2).
 
 
 9
 The union views its proposal as consistent with § 976(c) because, in bargaining over the proposal, it would be negotiating on behalf of civilian technicians, not "members of the armed forces." But the status of the technicians at the time of the negotiation cannot matter. No one would claim that § 976(c) permitted the union to bargain about the type of uniform the technicians would wear when they were called to full-time duty (or training, see 32 U.S.C. § 502(a)(1)). What does matter is the substance of the proposal to be negotiated.See United States Dep't of the Navy v. FLRA, 952 F.2d 1434, 1440-42 (D.C. Cir. 1992).
 
 
 10
 On that score the union thinks its proposal relates only to conditions of civilian technician employment--that is, how the technicians will be informed of the opportunity to volunteer for active duty at special pay. We agree that the proposal does this, but it also does considerably more than the union cares to admit. The FLRA so found and its interpretation deserves judicial respect. See National Treasury Employees Union v. FLRA, 30 F.3d 1510, 1514 (D.C. Cir. 1994). On the FLRA's view, the proposal deals with how the technicians will be paid while on active duty--will they, or will they not, receive military pay. Wages are a quintessential term of employment. See Fort Stewart Schs. v. FLRA, 495 U.S. 641, 644-57 (1990). The proposal also affects the manner in which the Air National Guard recalls a technician to active duty. One of the basic characteristics of all members of the National Guard, including dual-status technicians, is that they are subject to recall at any time pursuant to 10 U.S.C. § 12301.The proposal threatens to interfere with the National Guard's discretion to call technicians into action as it sees fit and on such terms as it desires. As a legal matter, we see no difference under § 976(c) between the union's proposal and a proposal that would flatly prohibit the National Guard from asking technicians to volunteer for full-time duty without military pay. The statute would quite clearly ban bargaining on the latter. We agree with the FLRA that the statute also bans bargaining on the proposal we have before us.
 
 
 11
 The petition for judicial review is denied.