**ASSOCIATION OF CIVILIAN TECHNI-CIANS, Texas Lone Star Chapter 100 and Association of Civilian Technicians, Wisconsin Chapter 26 (Army), Petitioners,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 00–1245.

United States Court of Appeals, District of Columbia Circuit.

Argued March 16, 2001.

Decided June 1, 2001.

---

Daniel M. Schember argued the cause and filed the briefs for petitioner.

Judith A. Hagley, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With her on the brief were David M. Smith, Solicitor, and William R. Tobey, Deputy Solicitor.

Before: EDWARDS, Chief Judge, WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

The National Guard Technician Act of 1968, 32 U.S.C. § 709(b), provides that, as a condition of civilian employment, technicians must, *inter alia*, be members of the National Guard and hold the military grade specified by the Secretary concerned. And § 709(a) of the Technician Act, 32 U.S.C. § 709(a), specifies that persons are employed as technicians "[u]nder regulations prescribed by the Secretary of the Army or the Secretary of the Air Force." Pursuant to this statutory authority, the Departments of the Army and the Air Force have promulgated regulations prohibiting military "grade inversion" in the National Guard. Under this policy, the military grade of a full-time supervisor must equal or exceed the military grade of personnel supervised. The grade inver-

sion policy has been clarified to apply to persons assigned to Wage Leader positions in the National Guard.

In this case, the Association of Civilian Technicians, Texas Lone Star Chapter 100 ("Texas–ACT"), and the Association of Civilian Technicians, Wisconsin Chapter 26 (Army) ("Wisconsin–ACT") (together, the "Unions"), the recognized collective bargaining agents for technicians employed by the Texas National Guard and the Wisconsin National Guard, submitted bargaining proposals that would have allowed for the assignment of technicians to Wage Leader positions without restriction based on the technicians' military grade. When the proposals were found to be nonnegotiable by the Offices of the Adjutant General, the Unions filed negotiability appeals with the Federal Labor Relations Authority ("FLRA" or "Authority").

The Authority found that the duty to bargain in good faith did not extend to the Unions' proposals because National Guard technicians may not negotiate over military aspects of civilian technician employment. *See Ass'n of Civilian Technicians, Texas Lone Star Chapter 100*, 55 F.L.R.A. (No. 196) 1226 (2000), *reprinted in* Joint Appendix ("J.A.") 10; *Ass'n of Civilian Technicians, Texas Lone Star Chapter 100*, 56 F.L.R.A. (No. 63) 432 (2000) (order denying motion for reconsideration), *reprinted in* J.A. 15. This conclusion was based on the Authority's consideration of three statutory provisions: 10 U.S.C. § 976(c)(2), which prohibits bargaining with, or on behalf of, members of the armed forces, concerning the terms or conditions of their service; § 7117(a)(1) of the Federal Service Labor–Management Relations Statute, 5 U.S.C. § 7117(a)(1), which prohibits bargaining over matters inconsistent with any federal law; and the afore-cited § 709 of the Technician Act. *See*

*Ass'n of Civilian Technicians, Texas Lone Star Chapter 100,* 55 F.L.R.A. at 1229.

We deny the petition for review. The Unions' proposals are outside of the duty to bargain under 5 U.S.C. § 7117(a)(1), because they are inconsistent with § 709(b). *See Ass'n of Civilian Technicians, Texas Lone Star Chapter 100,* 55 F.L.R.A. at 1229. The legislative history of § 709(b) clearly supports the Authority's conclusion that, in requiring civilian technicians to "[h]old the military grade specified by the Secretary," § 709(b) directs a civilian technician to occupy a military grade equal to or exceeding that of subordinate personnel. *See, e.g., Ass'n of Civilian Technicians, Mont. Air Chapter,* 20 F.L.R.A. (No. 85) 717 (1985), *petition for review denied,* 809 F.2d 930 (D.C.Cir. 1987) (Table). Because our decision rests principally on § 709, we need not reach the Unions' claim that the disputed proposals are negotiable subjects because they do not invite bargaining over a term or condition of military service in violation of 10 U.S.C. § 976(c)(2).

### I. BACKGROUND

 The Texas and Wisconsin chapters of the Association of Civilian Technicians represent technicians employed by the Texas National Guard and the Wisconsin National Guard (the "Guards"). National Guard technicians are federal civilian employees, but they "perform even their civilian tasks 'in a distinctly military context, implicating significant military concerns.'" *Illinois Nat'l Guard v. FLRA,* 854 F.2d 1396, 1398 (D.C.Cir.1988) (quoting *New Jersey Air Nat'l Guard v. FLRA,* 677 F.2d 276, 279 (3d Cir.1982)). National Guard technicians are, thus, considered to be "dual status" employees. *See* 10 U.S.C. § 10216; 32 U.S.C. § 709(b). As a prerequisite for their employment, technicians must be members of the Na-

tional Guard unit in which they are employed, maintain the military grade specified for their positions, and wear their military uniforms while working. *See* 32 U.S.C. § 709(b); *see also Ass'n of Civilian Technicians, Schenectady Chapter v. FLRA,* 230 F.3d 377, 378 (D.C.Cir.2000).

On March 31, 1995, the Departments of the Army and the Air Force promulgated National Guard Regulation 600–25 and Air National Guard Instruction 36–102, prescribing the Guards' military inversion policy, as follows:

> Military grade inversion within the full-time work force is not permitted. The grade inversion concept is inconsistent with the nature of the National Guard. The military grade of the full-time supervisor must equal or exceed the military grade of personnel supervised. Unit of assignment or service component of the individual does not change this policy.

Personnel General: Military Technician Compatibility, NGR 600–25/ANGI 36–102 at 2–1.a. (Mar. 31, 1995), *reprinted in* J.A. 29, 46.

Nearly three years later, the Chief of the National Guard Bureau for the Departments of the Army and the Air Force issued a policy guidance, clarifying that the military grade inversion policy applied to Wage Leaders. *See* Memorandum from Steve Nelson, Director for Human Resources, National Guard Bureau, NGB–HRC 690–500 (Jan. 7, 1998), *reprinted in* J.A. 27. Subsequently, in February 1999, the Wisconsin–ACT submitted the following bargaining proposal to the Wisconsin National Guard:

> A Wage Leader employee shall not, as a condition of employment, be required to hold a military rank which is equal to or exceeds the military ranks of the employees with whom the Wage Leader works.

Memorandum from Leslie J. Hackett, President, Wis. Ass'n of Civilian Technicians Chapter 26 Army, to Col. James Krueck, Wis. Nat'l Guard–Human Resources (Feb. 2, 1999), *reprinted in* J.A. 21. One month later, the Texas–ACT submitted a similar proposal:

> An employee shall be eligible to apply for, to be selected for, and to be appointed to, a Wage Leader position, or a position that requires work with a Wage Leader, without restriction based on whether the employee's appointment would result in the Wage Leader having a military rank below that of any employee with whom the Wage Leader works.

Letter from Ronald Webb, President, Ass'n of Civilian Technicians, Texas Lone Star Chapter 100, to Gloria Sassman, Labor Relations Specialist, Texas Adjutant General's Dep't (Mar. 26, 1999), *reprinted in* J.A. 51–52.

The Offices of the Adjutant General found both proposals to be nonnegotiable. *See* Memorandum from Col. James A. Krueck, Director, Wis. Nat'l Guard–Human Resources (Feb. 17, 1999), *reprinted in* J.A. 20; Letter from James D. Bishop, Labor Relations Specialist, Texas Adjutant General's Dep't, to Ronald Webb, President, Ass'n of Civilian Technicians, Texas Lone Star Chapter 100 (Apr. 27, 1999), *reprinted in* J.A. 53. The Unions then filed negotiability appeals with the Authority.

On January 14, 2000, the Authority issued a Decision and Order dismissing the appeals. The Unions moved for reconsideration, and on June 7, 2000, the Authority denied the motion for reconsideration. The Unions then filed this petition for review.

## II. ANALYSIS

### A. Standard of review

▮ Our review of an Authority negotiability determination is generally narrow. *Am. Fed'n of Gov't Employees v. FLRA,* 144 F.3d 85, 88 (D.C.Cir.1998); *Overseas Educ. Ass'n, Inc. v. FLRA,* 858 F.2d 769, 771 (D.C.Cir.1988). The Federal Service Labor–Management Relations Statute entrusts the Authority with "resolv[ing] issues relating to the duty to bargain in good faith." 5 U.S.C. § 7105(a)(2)(E). Review of a final order of the Authority incorporates § 706 of the Administrative Procedure Act. *See* 5 U.S.C. § 7123(c). Thus, when acting "within its authority" and "consistent with the congressional mandate," the Authority's decision may only be set aside if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97 & n. 7, 98 n. 8, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983).

▮ When the Authority's decision does not " 'derive[ ] primarily' from its interpretation of part of its enabling statute," however, and when it construes statutes that it does not administer, "its interpretation is not entitled to deference." *Dep't of Treasury v. FLRA,* 837 F.2d 1163, 1167 & n. 5 (D.C.Cir.1988); *see also Illinois Nat'l Guard,* 854 F.2d at 1400. In the instant case, the Authority's decision rests, in part, on its interpretation of 10 U.S.C. § 976 and 32 U.S.C. § 709, legislative enactments that are not part of its enabling statute. "We therefore accord the FLRA's construction of these statutory provisions no deference, although we shall, of course, follow its reasoning to the extent that we deem it sound." *Dep't of Treasury,* 837 F.2d at 1167.

## B. The proposals at issue are outside of the duty to bargain

 Section 7117(a)(1) of Title 5 specifies that the duty to bargain in good faith extends to matters "not inconsistent with any Federal law." 5 U.S.C. § 7117(a)(1). The FLRA found that the Unions' proposals are inconsistent with § 709(b) of the Technician Act, 32 U.S.C. § 709(b). We agree.

Subsections 709(b)(2) and (3) of the Technician Act state that National Guard technicians must be members of the National Guard and hold the military grade specified by the Secretary concerned for that position, that is, the military grade specified by the Secretary of the Army or the Secretary of the Air Force. These two subsections were contained in § 202 of H.R. 2, a bill proposed "to strengthen the Reserve components of the Armed Forces, and clarify the status of National Guard technicians," as originally introduced. H.R.REP. No. 90–13, at 1, 101–02 (1967). In Title II, which addressed the status of National Guard technicians, the bill as reported amended clause (b) of § 709 as follows:

> Except as prescribed by the Secretary concerned, a technician employed under subsection (a) shall, while so employed, be a member of the National Guard and hold the military grade specified by the Secretary concerned for that position.

*Id.* at 101–02. In the Report accompanying the original bill, the Committee on Armed Services observed that "[c]lause (b) convert[ed] to a statutory requirement" that which had long been the practice of the Secretary concerned, namely "to designate certain positions as 'officer positions,' others as 'enlisted positions,' which [could] be filled only by individuals who hold the appropriate grade in the National Guard." *Id.* at 58. The Committee recognized the "high correlation between the duties of the

technician in his military and civilian capacities," and concluded that,

> [i]n the interest of efficiency and discipline, a military commander should not be a civilian subordinate of a member of his unit. *Such inversions may be prevented by authorizing the Secretary concerned to establish the military grade required* for employment in a particular technician position. Proposed 32 U.S.C. § 709(b) of the bill *would so provide.*

*Id.* at 58–59 (emphasis added).

In the Fall of 1967, the Committee on Armed Services, considering H.R. 2, agreed to defer action on the section addressing the status of National Guard technicians until the second session of the 90th Congress. Senate Comm. on Armed Services, 90th Cong. 1967–68 Legislative Calendar, at 25 (July 22, 1968). During the second session, the Committee reported S. 3865, the National Guard Technician Act of 1968. S.REP. No. 90–1446 (1968). As with Title II of H.R. 2, a purpose of the bill was to clarify the technicians' legal status. *Id.* at 1. Important for present purposes, § 709 clause (b) of S. 3865 was identical to that contained in H.R. 2. *Id.* at 40–41. The Report accompanying S. 3865 expressed the firm view that "technicians who are required to be military members of the National Guard should occupy a military position which is compatible with their civilian technician position." *Id.* at 20.

The legislative history underlying § 709(b) underscores three points. First, Congress found compatibility requirements to be essential to military "efficiency and discipline." Second, Congress intended to maintain the long-time practice of the Secretary "to designate certain positions" to "be filled only by individuals who hold the appropriate grade in the National Guard." Third, in requiring National Guard technicians to "[h]old the military

grade specified by the Secretary concerned," § 709(b) aims, *inter alia,* to preserve the "high correlation between the duties of the technician in his military and civilian capacities." Because the Unions' proposals are at odds with these purposes, they are "inconsistent with [a] Federal law" and, consequently, outside the duty to bargain under § 7117(a)(1). *See, e.g., Ass'n of Civilian Technicians, Mont. Air Chapter,* 20 F.L.R.A. at 723–27 (examining legislative history of § 709 and reaching same result).

In short, under the Technician Act, it is clear that a National Guard technician "must" "hold the military grade specified by the Secretary concerned for that position," and that this requirement includes holding a grade that is consistent with the military grade inversion policy. It also appears undisputed that the Departments of the Army and the Air Force, implementing the decision of the Secretaries, specified that there could be no grade inversion in technician Wage Leader positions. The Authority was therefore fully warranted in finding that the Unions' proposals were nonnegotiable under § 7117(a)(1).

The Unions point out that the Authority did not find that § 709(b) grants the agency unfettered discretion to determine military grades. *See Ass'n of Civilian Technicians, Texas Lone Star Chapter 100,* 56 F.L.R.A. at 434 n.4. They assert, additionally, that because statutes granting agencies discretion, but not unfettered discretion, are not bars to negotiation, *see, e.g., Dep't of Veterans Affairs, Veterans Admin. Med. Ctr., Veterans Canteen Serv.,* 44 F.L.R.A. (No. 16) 162, 163–65 (1992), their proposals are not prohibited by § 709. This argument misses the point.

Bargaining over the military grade inversion policy is *inconsistent with a federal law.* That, by itself, makes the proposals nonnegotiable. The Authority made this absolutely clear when it held that, with regard to a matter that might otherwise be negotiable as a "condition of employment," "bargaining will nevertheless be foreclosed if a proposal is inconsistent with law." *Ass'n of Civilian Technicians, Texas Lone Star Chapter 100,* 55 F.L.R.A. at 1229, *reprinted in* J.A. 13. Further, in its order denying the motion for reconsideration, the Authority emphasized that the Unions' proposals are "outside the duty to bargain *without regard* to whether they are ... within the sole discretion of an agency." *Ass'n of Civilian Technicians, Texas Lone Star Chapter 100,* 56 F.L.R.A. at 434, *reprinted in* J.A. 17 (emphasis and ellipsis in original). We can find no fault with these holdings.

The Unions contend that the Authority's decision goes too far in suggesting that *any* proposal affecting the "military aspects of technician employment" is outside of the duty to bargain. There is merit in this contention, but we need not address the issue. The Authority is correct that the disputed Union proposals are "inconsistent with law" and, therefore, beyond the bounds of permissible bargaining. We deny the petition for review on this ground alone.

### III. CONCLUSION

The petition for review is hereby denied. *So ordered.*