Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued October 16, 2003        Decided December 23, 2003

No. 02-1311

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
NATIONAL VETERANS AFFAIRS COUNCIL 53,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

————

On Petition for Review of a Decision and Order of the
Federal Labor Relations Authority

————

*Joe Goldberg* argued the cause for the petitioner. *Mark D. Roth* and *Charles A. Hobbie* were on brief.

*James F. Blandford*, Attorney, Federal Labor Relations Authority, argued the cause for the respondent. *David M. Smith*, Solicitor, and *William R. Tobey*, Deputy Solicitor, Federal Labor Relations Authority, were on brief.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: HENDERSON, TATEL and ROBERTS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: The American Federation of Government Employees, National Veterans Affairs Council 53 (Union) petitions for review of a decision of the Federal Labor Relations Board (FLRA, Board) which declared nonnegotiable the Union's proposal to require that the United States Department of Veterans Affairs, Vista Clinic (Agency) permit a Union observer to be present at any performance-based interview (PBI) conducted to fill a bargaining unit position.[1] The FLRA concluded that the proposal affects management's right to "make selections for appointments" under 5 U.S.C. § 7106(a)(2)(C). Because the FLRA's decision is not " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' " we deny the petition for review. *Ass'n of Civilian Technicians v. FLRA,* 250 F.3d 778, 782 (D.C. Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)) (citations omitted).

The Union's proposal states:

> When performance-based-interviewing is used for Title 5 bargaining unit positions, the local Union will be given the opportunity for an observer throughout the interviewing process.

58 F.L.R.A. at 8. The FLRA based its decision that the proposal is not negotiable on three separate determinations.

First, the FLRA determined the proposal affects the Agency's management rights under 5 U.S.C. § 7106(a)(2)(C), which provides:

> (a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—
>
> . . .

---

[1] In a PBI "[j]ob-related, performance-based examples, such as how an interviewee dealt with an irate customer, are used to compare the response to the expectations of the specific job." JA 42.

> (C) with respect to filling positions, to make selections for appointments from—
>
> > (i) among properly ranked and certified candidates for promotion;  or
> >
> > (ii) any other appropriate source;  . . . .

The FLRA reasoned that "when conducting PBIs, the Agency is involved in the decision-making process for making selections for appointments" and, in particular, that the Agency "gathers information about the candidates and, based on the information gathered, makes evaluations concerning them." 58 F.L.R.A. at 10. The "information-gathering and evaluative aspects of PBIs," the FLRA explained, "demonstrate that PBIs are an integral part of the 'discussions and deliberations' that lead to selection decisions," 58 F.L.R.A. at 9 (quoting *AFGE Local 1923*, 44 F.L.R.A. 1405, 1442 (1992)), and the Authority had previously held such "discussions and deliberations" affect management rights, see 58 F.L.R.A. at 10 ("The Authority has long held that proposals providing for union participation in 'discussions and deliberations leading to decisions' involving the exercise of management's rights affect those rights.") (citing *AFGE Local 1923*, 44 F.L.R.A. at 1442 (citing *Nat'l Fed'n of Fed. Employees, Local 1437*, 35 F.L.R.A. 1052 (1990))). Because the information-gathering PBIs are an integral part of the deliberative and decisionmaking process, it was reasonable for the FLRA to conclude that union presence at the PBIs, without management consent, will interfere with management's authority to make selections for appointments and therefore to declare the Union's proposal nonnegotiable. *See Nat'l Fed'n of Fed. Employees, Local 1745 v. FLRA*, 828 F.2d 834, 838 (D.C. Cir. 1987) ("We sustain the FLRA in its holding that the right of selection conferred on management by Section 7106(a)(2)(C) extends to the entire selection process, as conducted in accordance with subsections (C)(i) and (ii).").[2]

_____

[2] We recognize that the PBI itself would not ordinarily include discussions or deliberations by decisionmakers but is instead, as the Authority indicated, designed to elicit information on which such discussions and deliberations, and the selection decision itself, are

Second, the FLRA determined that the proposal is not negotiable as a "procedure" under 5 U.S.C. § 7106(b)(2):

> (b) Nothing in this section shall preclude any agency and any labor organization from negotiating–
>
> . . .
>
> (2) procedures which management officials of the agency will observe in exercising any authority under this section; . . . .

5 U.S.C. § 7106(b)(2). As with the management rights determination, the Authority relied on its precedent addressing "discussions and deliberations pertaining to the exercise of management's right [to select under section 7106(a)(2)(C)]," which it has concluded "are not procedures, but concern management's substantive decision-making process." *Nat'l Treasury Employees Union*, 28 F.L.R.A. 647, 649 (1987). Again, we find the Authority reasonably applied its precedent to prevent interference with the information-gathering portion of the process. The Union points to other FLRA decisions finding negotiable proposals which allowed union

---

based. As the Union notes, the Authority's decision cites precedent in which a proposal was found nonnegotiable because it directly interfered with management's discussions and deliberations. *See Nat'l Fed'n of Fed. Employees, Local 1437*, 35 F.L.R.A. 1052, 1061–62 (1990) (proposal requiring management to select member of Agency's rating and ranking panel from union-compiled list nonnegotiable). The Authority cites *Nat'l Fed'n of Fed. Employees, Local 1437* only to support the underlying principle that under its precedent "discussions and deliberations leading to decisions" are protected under section 5 U.S.C. § 7106(a)(2)(C) and not as direct authority for the ultimate determination that PBIs are protected because they form a part of the same deliberative and decisional process. We are unaware of any precedent that extends section 7106(a)(2)(C)'s protection of the process only to discussions and deliberations. *See Nat'l Fed'n of Fed. Employees, Local 1437*, 35 F.L.R.A. at 1061–62 ("The Authority consistently has held that the exercise of management's rights also *encompasses actions integral to the exercise of the right, including* discussion and deliberation on the relevant factors upon which the decision to act is made.") (emphasis added).

representatives at meetings where employees received "opportunity to improve performance" letters or which required priority consideration in filling vacancies to be given to bargaining unit employees (but which did not require selection of such employees or limit selection to them). In each case, however, the Authority made clear that the subject of the proposal was merely a "procedure" and that it did not affect the substance of the selection process.[3] As we explained above, the proposal here *does* interfere with the selection process.

Third, the Authority determined that the proposal is not negotiable as an "appropriate arrangement" under 5 U.S.C. § 7106(b)(3). This section provides:

> (b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
>
> . . .
>
> (3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

5 U.S.C. § 7106(b)(3). In applying this provision, the FLRA first determines whether "an adverse effect is reasonably foreseeable" and if "the disputed proposal is intended to be an arrangement for employees adversely affected"; if so, the

---

[3] *See AFGE Local 3354*, 34 F.L.R.A. 919, 926 (1990) (because performance improvement letter "applies only after the Agency's internal deliberative process concerning application of performance standards has been completed," it "does not permit the Union to interject itself into the Agency's internal deliberations concerning the performance appraisal process"); *Ass'n of Civilian Technicians, Volunteer Ch. 103*, 55 F.L.R.A. 562, 565 (1999) ("proposal that requires an agency to give first consideration to bargaining unit employees when filling vacant positions, but does not prevent management from timely considering other applicants or expanding the area of consideration once bargaining unit employees are considered, does not directly interfere with management's right to select from any appropriate source under section 7106(a)(2)(C)"); *Laurel Bay Teachers Ass'n*, 49 F.L.R.A. 679, 687 (1994) (same) (citing *AFGE Local 1923*, 44 F.L.R.A. 1405, 1442 (1992)).

Authority then "will examine whether the proposal excessively interferes with management's rights." *Nat'l Ass'n of Gov't Employees, Local R1–100*, 39 F.L.R.A. 762, 766 (1991) (citing *Nat'l Fed'n of Fed. Employees, Local 2096*, 36 FLRA 834, 841 (1990)). The Union did not make the threshold showing that the proposal "is in fact intended to be an arrangement for employees adversely affected by management's exercise of its rights" by "articulat[ing] how employees will be detrimentally affected by management's actions and how the matter proposed for bargaining is intended to address or compensate for the actual or anticipated adverse effects of the exercise of the management right or rights." *Nat'l Ass'n of Gov't Employees, Local R14–87*, 21 F.L.R.A. 24, 31 (1986). There is no dispute that any employee is free to have a Union representative present at a PBI if he chooses. Thus, the only effect of the Agency's assertion of its management right by rejecting the infringing proposal is to prevent the Union from demanding that its observer be allowed to be present without regard to the employee's wishes. We do not see how this effect can be characterized as adverse to employees whose choice could otherwise be overridden by the proposal. The Union identifies two adverse effects it asserts will result from conducting a PBI without its representative present: it will add to the stress of those being interviewed and it will increase the likelihood that improper questions will be asked. The Authority reasonably concluded, however, that "for candidates who do not want a Union observer present, such presence would increase stress." The Authority further noted that the Union already has the ability to prevent improper questioning because it "will be provided an advance copy of PBI questions and will be allowed to consult with candidates after PBIs to ensure that appropriate questions were asked." 58 F.L.R.A. at 68.

For the foregoing reasons, we conclude that the FLRA reasonably declared the Union's proposal to be nonnegotiable under 5 U.S.C. § 7106. Accordingly, the Union's petition for review is

*Denied.*