Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued  January  9,  2004        Decided  March  12,  2004

No. 03-1141

ASSOCIATION OF CIVILIAN TECHNICIANS,
WICHITA AIR CAPITOL CHAPTER,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of an Order of the
Federal Labor Relations Authority

———

*Daniel M. Schember* argued the cause and filed the briefs for petitioner.

*James F. Blandford*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief were *David M. Smith*, Solicitor, and *William R. Tobey*, Deputy Solicitor.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: Sentelle, Tatel, and Roberts, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Tatel.

Tatel, *Circuit Judge*: Federal law makes it a crime to engage in collective bargaining over the terms or conditions of military service on behalf of members of the National Guard who are serving on full-time National Guard duty. Relying on that law, 10 U.S.C. § 976 (2000), the Federal Labor Relations Authority declined to order the Guard to bargain over a union proposal concerning military training duties assigned to National Guard technicians who serve as both civilian employees and military members of the Guard. Because the union's proposal concerns duties assigned to technicians while serving in civilian status, not while serving on full-time National Guard duty, we hold that the statute does not prohibit bargaining over the proposal and thus grant the union's petition for review.

## I.

In addition to active-duty military personnel, the National Guard employs civilian technicians to meet its day-to-day administrative, clerical, and technical needs. *Ass'n of Civilian Techs., Schenectady Chapter v. FLRA*, 230 F.3d 377, 378 (D.C. Cir. 2000). Technicians occupy a dual-employment status: in addition to serving as federal civilian employees, *see* 5 U.S.C. § 2105(a)(1)(F) (2000), they must be military members of the National Guard under the National Guard Technicians Act, *see* 32 U.S.C. § 709(b)(2) (2000) (Technicians Act). Military members of the National Guard must "assemble for drill and instruction . . . at least 48 times each year" and "participate in training at encampments . . . at least 15 days each year." *Id.* § 502(a) (2000). The National Guard may recall members to active duty at any time. *See* 10 U.S.C. § 12,301 (2000). During periods of full-time National Guard duty, civilian technicians receive military pay and benefits.

Technicians may engage in collective bargaining, *see* 5 U.S.C. § 7102 (2000), but 10 U.S.C. § 976—the statute at issue in this case—makes it a crime to bargain on behalf of

members of the armed forces over the terms or conditions of their military service. *Id.* § 976(c)(2). Violations of section 976 are punishable by fines, imprisonment, or both. *Id.* § 976(f).

Petitioner, the Association of Civilian Technicians, Wichita Air Capitol Chapter, is the exclusive representative of dual-status National Guard technicians employed by the Kansas National Guard. During collective bargaining, the union submitted a proposal concerning the assignment of military training duties to technicians. Although all members of the National Guard must undergo such training, the proposal involves training assigned to technicians while serving in their civilian capacity. The union's proposal defines "military training duty" as:

> duty that is (1) required by a written policy or regulation that is applicable to members of the National Guard irrespective of whether they are employees, (2) designed to impart or to measure proficiency in a military skill, and (3) required by written policy or regulation to be performed for a specified period of time, or with a specified frequency, or until a specified level of proficiency is achieved.

The proposal gives two examples of military training duty: "rifle qualification" and "training in the wear of garments designed to afford protection from chemical weapons (Chem Gear)." It would require the Guard to include in technician position descriptions any military training duty assigned as work, to give both technicians and the union notice and an opportunity to discuss any changes to the listed information, and, upon union request, to "negotiate the impact and implementation of military training duty assigned to any employee as work." Paragraph five of the proposal would require the Guard to assign military training duty by written order that describes, among other things:

> the type, severity, and relative frequency of occurrence of any injury or illness that is known to have resulted from past performance of the duty or that

is foreseeable; . . . precautionary measures that the [Guard] will take and that the employee may take to reduce the risk of injury; . . . [and] measures that the [Guard] will take to provide prompt, effective treatment in the event injury does occur.

Paragraph five would also require the Guard to make representatives available to technicians "to discuss [the assigned military training duty], to answer questions, and to listen to any concerns." Finally, paragraph six would prohibit the Guard from requiring technicians to wear chemical gear "as a method and means of performing work."

Declaring the proposal outside its obligation to bargain, the Kansas National Guard refused to negotiate, and the union appealed to the Federal Labor Relations Authority. *See* 5 U.S.C. § 7117(c) (2000). According to the union, its proposal did not run afoul of section 976(c) because the proposal pertained only to military training duties performed on civilian time. The Authority disagreed, holding that the critical distinction under section 976(c) is not "[a] technician's status at the time a proposal would operate," but rather "whether the proposal relates to military service or civilian employment." *Ass'n of Civilian Techs., Wichita Air Capitol Chapter*, 58 F.L.R.A. 28, 30 (2002). Applying that test, the Authority explained: "[i]t is clear that the military training duties that are the subject of the proposal are military skills required because an individual is a member of the National Guard—not skills based in the individual's civilian status." *Id.* at 31. "Because paragraph 5 of the proposal is inconsistent with § 976(c)," the Authority concluded, "it is outside the [Guard's] duty to bargain under [5 U.S.C. §] 7117." *Id.* FLRA Chairman Cabaniss concurred on the grounds that the proposal was "outside the duty to bargain" because it was "contrary to the Technicians Act" and concerned "a military aspect of technician employment." *Id.* at 32.

The union now petitions for review. *See* 5 U.S.C. § 7123(a).

## II.

Section 976(c)(2) provides: "It shall be unlawful for any person . . . to negotiate or bargain . . . on behalf of members of the armed forces, concerning the terms or conditions of service of such members."  10 U.S.C. § 976(c)(2).  Section 976(a)(1) defines "member of the armed forces" as "(A) a member of the armed forces who is serving on active duty, (B) a member of the National Guard who is serving on full-time National Guard duty, or (C) a member of a Reserve component while performing inactive-duty training."  *Id.* § 976(a)(1).  Because Congress has not delegated any responsibility to the Authority for administering section 976, we owe the agency's interpretation of the statute no deference.  *See Ill. Nat'l Guard v. FLRA*, 854 F.2d 1396, 1400 (D.C. Cir. 1988).  Although "we follow the FLRA's reasoning to the extent that we deem [it] sound, we review the FLRA's decision . . . *de novo*."  *Id.* (citation and internal quotation marks omitted).

The union argues, as it did before the Authority, that section 976(a)(1)'s definition of "member of the armed forces" places a temporal limit on section 976(c)'s prohibition on bargaining over terms or conditions of military service.  As the union sees it, "[p]rocedures used to assign technicians work to be done during hours of civilian employment, for civilian pay, are not terms [or] conditions of military service, regardless of the nature of the work assigned."  Pet'r's Br. at 3.  According to the union, therefore, because its proposal concerns duties that, though military in nature, are performed by technicians in their civilian capacity, the statute is inapplicable.  Neither the Authority's decision nor its brief in this court responds to the union's argument.  Instead, the Authority argues that purely military aspects of technicians' employment—like the military training duties at issue—constitute terms or conditions of military service regardless of when the training takes place.  Based on the statute's text, its legislative history, and established canons of statutory construction, we think the union's interpretation of section 976 is correct.

We begin with the language of the statute. Section 976(a)(1) defines "member of the armed forces" as "a member of the National Guard *who is* serving on full-time National Guard duty." 10 U.S.C. § 976(a)(1) (emphasis added). If we import this definition into section 976(c)(2), the provision reads as follows: "it shall be unlawful for any person . . . to negotiate or bargain . . . on behalf of [members of the National Guard who are serving on full-time National Guard duty], concerning the terms or conditions of service of such [members who are serving on full-time National Guard duty]." The union is thus quite right: section 976(c)(2) prohibits bargaining not on behalf of members of the National Guard, but rather on behalf of members of the National Guard "who [are] serving on full-time National Guard duty." Because the union's proposal applies exclusively to those military training duties that the Guard assigns to technicians during hours of civilian work and for civilian pay, it falls outside the terms of section 976(c)(2).

To be sure, military training duty regardless of when performed could be viewed as a term or condition of National Guard service, for technicians, who are required to be military members of the Guard, must undergo such training in order to serve on active military duty. The statute, however, does not prohibit bargaining over terms or conditions of National Guard service in all circumstances. It prohibits only bargaining concerning terms or conditions of full-time National Guard duty on behalf of members who are serving on full-time National Guard duty. When the Guard chooses to assign military training duties to technicians in their civilian capacity, those duties also become terms or conditions of civilian employment. Because the technicians perform those duties while serving in their civilian capacity, they are not, at that time, "serving on full-time National Guard duty." The union thus seeks to bargain not "on behalf of members of the armed forces, concerning the terms or conditions of service of such members," but rather on behalf of civilian technicians concerning the terms or conditions of their civilian employment.

The Authority points out that the statute's purpose is "to promote the readiness of the armed forces to defend the United States," Pub. L. No. 95–610, § 1(b), 92 Stat. 3085 (1978), and argues that the "military training at issue here, regardless of when it takes place, is intended to maintain skills and expertise required of an active duty member of the military," Resp't's Br. at 11. This is certainly true, but section 976 makes clear that it applies only when members are serving on full-time National Guard duty. The legislative history, moreover, reveals that Congress was well aware of the need to ensure the Guard's military readiness yet drafted the statute narrowly. The House Committee on Post Office and Civil Service rejected Senate provisions that would have fully included civilian technicians as members of the armed forces, explaining that it "was not persuaded by the arguments . . . that collective-bargaining activities by employee representatives detracted from the preparedness of the National Guard." H.R. Rep. No. 95–894(II), at 6 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7586, 7590. Striking those more inclusive Senate provisions, the committee rejected "the premise . . . that civilian technicians, while serving in their civilian capacity, are members of the military." *Id.* at 7. The House Armed Services Committee, which also had jurisdiction over the bill, shared this view. Although recognizing that "the prohibition on military labor union membership must extend to the personnel of Reserve and National Guard components, since they are subject to mobilization in the event of a war or national emergency and would be serving side by side with active forces personnel," the committee emphasized section 976's narrow scope:

> [S]ince the restriction on their union membership affects First Amendment rights, the committee believes that the restriction should be drawn as narrowly as possible. To accomplish this, the bill provides that Reserve and National Guard personnel shall be considered as members of the armed forces only 'while performing inactive duty training,' i.e. those periods when they are actually in uniform and engaged in military training or instruction. It is the

committee's belief that this limitation will be sufficient to govern the conduct of reservists while they are actually engaged in military duties. . . .

H.R. Rep. No. 95–894(I), at 8–9 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7575, 7580–81.

The union's temporal reading of section 976 also finds support in the well-established principle that "penal statutes are to be construed strictly." *United States v. Campos-Serrano*, 404 U.S. 293, 297 (1971). "When choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Id.* Although this is not a criminal case, the Supreme Court has made clear that "[t]here cannot be one construction for the [regulatory agency] and another for the Department of Justice. If we should give [the statute] the broad construction urged by the [agency], the same construction would likewise apply in criminal cases." *FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954). So too here. Absent "clear and definite" guidance from Congress, we will not choose the Authority's "harsher alternative," which would criminalize negotiations on behalf of technicians concerning work assigned to them in their civilian capacity.

Contrary to the Authority's view, nothing in *Ass'n of Civilian Technicians, Schenectady Chapter v. FLRA*, 230 F.3d 377 (D.C. Cir. 2000), our only previous decision addressing section 976(c), requires a different result. In that case, we considered whether the statute prohibited negotiations over a union proposal that would have restricted the Guard's ability to communicate with technicians about their eligibility to volunteer for active duty by taking leave from their civilian posts while still receiving civilian pay. Interpreting section 976(c), we explained that what "matter[s] is the substance of the proposal to be negotiated," not "the status of the technicians at the time of the negotiation." *Id.* at 379. Because the proposal "deal[t] with how the technicians [would] be paid *while on active duty*," we held that section 976(c) barred

negotiations. *Id.* at 380 (emphasis added). By contrast, the issue in this case is not the technicians' status at the "time of the negotiation," but rather their status at the time the duties are performed. Unlike the proposal in *ACT, Schenectady*, which dealt with the terms of technicians' pay while on active duty, i.e., "during full-time National Guard duty," the substance of the proposal here concerns the performance of duties, albeit of a military nature, assigned during hours of civilian employment.

The Authority also relies on two other decisions, *National Federation of Federal Employees, Local 1623 v. FLRA*, 852 F.2d 1349 (D.C. Cir. 1988) and *Ass'n of Civilian Technicians, Texas Lone Star Chapter 100 v. FLRA*, 250 F.3d 778 (D.C. Cir. 2001), to support its interpretation of section 976. Those cases, however, dealt with technicians' collective bargaining rights under the Technicians Act, 32 U.S.C. § 709, not the criminal statute at issue here.

We share the Authority's concern that aspects of the union's proposal could permit bargaining over purely military matters—such as rifle qualification or wearing chemical warfare gear—"designed to impart or to measure proficiency in a military skill" and mandated for all members of the Guard, whether or not employed as civilian technicians. But we may neither ignore section 976's temporal limit nor distort the statute to accommodate such concerns. Our job is to enforce the statute as enacted by Congress. If the Guard wishes to insulate all military training duties from collective bargaining, it should either ask Congress to amend section 976, or, more simply, assign military training duties to technicians while they are serving on full-time National Guard duty—the time when all other Guard members perform such training.

The union's petition for review is granted, the Authority's decision is vacated, and this matter is remanded for proceedings consistent with this opinion.

*So ordered.*